Joseph F. McGINNIS, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

Alfio COSTANZO, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

John P. SULLIVAN, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

Sydney R. McTAVISH, w.a. James McGuire, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 5020–5023.

United States Court of Appeals First Circuit.

Dec. 1, 1955.

---

1. Now 28 U.S.C.A. § 1400.

2. Now 28 U.S.C.A. §§ 1391, 1401, 1693, 1695.

Reuben Goodman, Boston, Mass., with whom Paul T. Smith, Manuel Katz and Joseph T. Doyle, Boston, Mass., were on brief, for Joseph F. McGinnis and Sydney R. McTavish, etc., appellants.

Michael T. Stella, Lawrence, Mass., for Alfio Costanzo, appellant.

John P. Sullivan, pro se, submitted on the record and brief for other appellants by leave of court.

Arthur J. Reinhart, Asst. U. S. Atty., Portsmouth, N. H., with whom Maurice P. Bois, U. S. Atty., Concord, N. H., was on the brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

These are appeals by the defendants from judgments entered by the United States District Court for the District of New Hampshire on March 25, 1955, based on verdicts of guilty returned by the jury on the first count of a two count indictment.

The first count charged the defendants, Joseph F. McGinnis, Alfio Costanzo, John P. Sullivan and Sydney R. McTavish, w. a. James McGuire " * * * did have and possess property intended for use in violating the provisions of the Internal Revenue laws or regulations * * * " in violation of 26 U.S.C. § 3116. The de-

fendants were found not guilty on the second count which charged that they " * * * did conspire to commit an offense against the United States of America, to wit: to violate Title 26 United States Code, Section 3116 * * * " in violation of 18 U.S.C. § 371.

It appears from the evidence that on Saturday, February 27, 1954, at about 12:30 p. m., Sergeant Archie M. Brown of the New Hampshire State Police was notified of a highway accident which had occurred on Route 3–B in Canterbury, New Hampshire. He decided to investigate personally after being told by James C. Birnie that the truck involved in the accident contained liquor. When Brown arrived at the scene of the accident he found a Ford truck containing a large load of empty five gallon cans tipped over on its right side. The defendant Costanzo was at the scene, and thereafter the defendant McGinnis arrived in a wrecker which had come from Concord. At about this time the defendant Sullivan also appeared.

Sergeant Brown viewed the truck. Suspecting that there might be a violation of federal law, he called state police headquarters and requested that they contact James M. Kent, an investigator in the Alcohol and Tobacco Tax Division, United States Treasury Department, Bureau of Internal Revenue, " * * * to dispatch him to the scene to assist me."

Kent drove from his home in Concord to the scene of the accident where he viewed the truck and talked with Brown. McGinnis, Costanzo and Sullivan were then taken to state police headquarters by Sergeant Brown and his men. Kent went along, and they all arrived at headquarters at about 2:30 p. m.

At about 3:30 p. m. Kent called his superior, Burleigh W. Fletcher, supervisor in charge of the Boston district and left word for him to come to the New Hampshire State Police Headquarters.

Sometime that afternoon Sergeant Brown procured from a justice of the peace for the County of Merrimack a warrant to search the " * * * Barn of said John Doe in said Canterbury * * *." With this warrant Brown, three state troopers, and Kent all went together to the Hawes farm, so called, arriving there at about 5 p. m. Brown forced open the barn door and together with Kent searched the barn and the dwelling. In the course of this search Brown removed from the premises a metal pipe cup, a hydrometer, and a saccharometer. (Plaintiff's Exhibit Nos. 30, 31 and 32). At about 8 p. m. everyone left the premises and Brown and Kent, along with some of the others, went back to state police headquarters where Fletcher was awaiting their return.

At about 9 p. m. it became evident to Brown that " * * * the State had no further interest in this matter. And at this particular time I turned the entire thing over to Mr. Fletcher, and I left the State Police headquarters." Then at about this same time Kent arrested McGinnis, Costanzo and Sullivan. (A warrant for the arrest of McTavish was not issued until September 23, 1954, after the indictment was returned).

Early on Sunday, February 28, at about 1 a. m. Kent, Fletcher and several other federal agents returned to the Hawes farm where they conducted a search without a warrant. Kent and Fletcher left the premises at about 3:30 or 4 a. m., but the others remained. Around 9 a. m. Kent and Fletcher returned to observe the premises in the daylight. At this time Fletcher received from investigator Judd of the Alcohol Tax Unit a sugar sample and a sample of hastener. This was the last time Fletcher visited the farm. Kent returned later Sunday afternoon, but apparently only to visit with "the boys".

On Monday, March 1, Kent for the first time applied to the United States Commissioner at Manchester, New Hampshire, for a search warrant. Kent's affidavit upon which a warrant was issued, recited that certain specific items said to have been observed by him in the course of his visit to the Hawes farm on Satur-

day, February 27, were present upon the premises. The return of the search warrant shows that some items were seized and taken to a warehouse and others were destroyed on the premises.

During the course of the trial counsel for the defendants made known their intention to object to the introduction of all evidence resulting from any of these searches of the Hawes farm. The court permitted a "blanket objection" to the introduction of this evidence, saying "I call it a blanket objection. It is the understanding of the Court that counsel for all respondents are entering an objection to the reception of any evidence touching upon the seizure of the premises, as to what was observed, seized, and if you can add anything else to it I will accept it."

The court admitted all this evidence, but later at the close of all evidence ruled out the metal pipe cup, hydrometer and saccharometer as follows: " * * * I am speaking now of Exhibit 30, 31 and 32, and it is my finding that these items are not properly admissible, because it appears that on the day that they were seized by the State Trooper, Mr. Archie Brown, Mr. Brown was accompanied by Mr. Kent, a Federal agent, and on the testimony before me here it was to the effect that Mr. Kent had participated in this search. And under the Federal law, if a Federal officer participates in a state search and he himself is not armed with a Federal warrant, he may not make a search or a seizure. And therefore I rule that these items are not properly before this Court, and they and all evidence bearing upon their particular seizure and anything akin to it is excluded from your consideration and will not be before you."

The court also ruled out the hastener and sugar samples, saying:

"Specifically, I am ruling out—let me see that jar. I can't tell the number from here.

"The Clerk: Defendant's Exhibit E.

"The Court: It has been referred to as hastener, I believe, and which was produced in here by—I believe

the chemist produced it. And it was introduced by the defendant.

"Now the other can, Mr. Barry, what is the number of that?

"The Clerk: Defendant's Exhibit H.

"The Court: Exhibit H. And that, I think, was defined as having contained sugar or sucrose. That, too, is withdrawn from your consideration. Both of those items are withdrawn from your consideration, and all testimony bearing on those particular items is withdrawn from your consideration, it being my finding and ruling as a matter of law that those items were acquired by the Government on the 28th day of February, which was the day preceding a search warrant, and that the Government in my opinion and my view was without authority to acquire those items, and they have no legal standing in this Court as evidence. And therefore they and any testimony bearing upon those items are withdrawn from your consideration."

The court then made the following statement to the jury: "All other matters of evidence, all other items, are before you. They will be considered in your deliberations." Later, in his charge to the jury, the trial judge said: " * * * it has been my ruling that this Federal search warrant which was issued on the first of March by a United States Commissioner was a proper warrant and that the evidence that was obtained thereunder and which has been admitted in this Court has been properly admitted and that the search and the seizure was in compliance with all Constitutional requirements."

▆ We agree with the trial judge that the seizures made on Saturday, February 27, were illegal. The state search warrant authorized the search of the "said barn of said John Doe in Canterbury." There is testimony that Canterbury is a farming country in which there are located quite a few barns. Sergeant Brown who procured the state search

602

warrant admitted that he could have invaded the privacy of any person having a barn in Canterbury. The description of the premises in the state search warrant is certainly not such as could be said to enable the officer with reasonable effort to ascertain and identify the farm. We have no hesitancy in holding that the state search warrant is invalid. Steele v. United States No. 1, 1925, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757; Metcalf v. Weed, 1890, 66 N.H. 176, 19 A. 1091.

In Byars v. United States, 1927, 273 U.S. 28, 33, 47 S.Ct. 248, 250, 71 L.Ed. 520, the court said:

" * * * We cannot avoid the conclusion that the participation of the agent in the search was under color of his federal office and that the search in substance and effect was a joint operation of the local and federal officers. In that view, so far as this inquiry is concerned, the effect is the same as though he had engaged in the undertaking as one exclusively his own. * * * "

We agree, likewise, that the seizures on Sunday, February 28, were illegal. In this connection the trial judge said: " * * * By the same token, by analogy, by logic and any other sort of reasoning, if the search warrant is required and properly required, and I found it was required and properly exercised on that day, it follows that on any previous day they could not have taken anything away from the premises without the rights and authorities of some judicial officers directing them to seize it."

█ Of course, not every search by federal agents without a proper warrant is necessarily unreasonable and in violation of the constitutional protection. Whether a search without a warrant is unreasonable depends upon the facts of the particular case. Papani v. United States, 9 Cir., 1936, 84 F.2d 160. In McDonald v. United States, 1948, 335 U.S. 451, 454, 69 S.Ct. 191, 193, 93 L.Ed. 153, the court said:

"Where, as here, officers are not responding to an emergency, there

must be compelling reasons to justify the absence of a search warrant. A search without a warrant demands exceptional circumstances, as we held in Johnson v. United States, supra [333 U.S. 10, 68 S.Ct. 367, 92 L. Ed. 436].

*     *     *     *     *

"Here, as in Johnson v. United States and Trupiano v. United States [334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663], the defendant was not fleeing or seeking to escape. Officers were there to apprehend petitioners in case they tried to leave. Nor was the property in the process of destruction nor as likely to be destroyed as the opium paraphernalia in the Johnson case. Petitioners were busily engaged in their lottery venture. No reason, except inconvenience of the officers and delay in preparing papers and getting before a magistrate, appears for the failure to seek a search warrant. But those reasons are no justification for bypassing the constitutional requirement, as we held in Johnson v. United States, supra, 333 U.S. at page 15, 68 S.Ct. at page 369."

█ The trial judge found no "compelling reasons" in this case to justify searches without a legal warrant, nor do we.

We now come to the question which we consider dispositive of these appeals. Briefly stated, it seems to us that the trial judge took too narrow a view of the protection afforded by the Fourth Amendment, and we think that his position is clearly set forth in his statement: " * * * By the same token, by analogy, by logic and any other sort of reasoning, if the search warrant is required and properly required, and I found it was required and properly exercised on that day, it follows that on any previous day they could not have taken anything away from the premises without the rights and authorities of some judicial officers directing them to seize it."

■ This statement sets forth one consequence of an illegal search, namely, that any seizure made during an illegal search would itself be illegal, and therefore, if timely and appropriate objection were made, such items could not properly remain in evidence. But this is not the full measure of the constitutional protection. We find no basis in the cases or in logic for distinguishing between the introduction into evidence of physical objects illegally taken and the introduction of testimony concerning objects illegally observed. We are aware of no case which makes this distinction. Moreover, it seems to us that the protection afforded by the Constitution against unreasonable search and seizure would be narrowed down to a virtual nullity by any such view of the law, which in effect would grant to the victims of unreasonable search and seizure the rather unsubstantial right to be convicted on the basis of evidence which was illegally observed rather than evidence which was illegally taken. Such is the plight of the defendants in this very case.

In Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 391, 392, 40 S. Ct. 182, 183, 64 L.Ed. 319, the court said:

> "The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the Government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession but not any advantages that the Government can gain over the object of its pursuit by doing the forbidden act. * * * The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. * * *"

■ We believe that when the trial court excluded the hydrometer and sac-charometer and all testimony relating to these items taken during the illegal search made on Saturday, February 27, it ought likewise to have excluded all testimony as to all observations made during that illegal search. This would exclude some of the most damaging testimony given by Brown and part of the damaging testimony given by Kent.

When the trial court excluded the hastener and sugar samples obtained during the illegal search made on Sunday, February 28, and all testimony relating to them, it ought likewise to have excluded all testimony as to all observations made during the course of that illegal search. This would exclude much damaging testimony given by Kent and Fletcher, among others. Failure to exclude this testimony was prejudicial error as to all defendants.

■■ In addition to the foregoing, we also think that the federal search warrant obtained on March 1 was invalid and that the evidence obtained in the course of the search thereunder was inadmissible. The search warrant issued by the United States Commissioner on March 1 was issued on the basis of an affidavit by Federal Agent Kent to the effect that he had reason to believe that there was then being concealed on the premises of the Old Hawes Farm certain property and equipment used in violation of federal law. Kent's only assertion in the affidavit of facts tending to establish this claimed ground for issuance of a federal search warrant was the following: "On February 27, 1954, on invitation of New Hampshire State Police a visit to the described premises, by the undersigned, disclosed the presence of the specific items at the premises referred to." A federal agent cannot participate in an unlawful search, and then on the basis of what he observed in the course of that search, and on that basis alone, go to a United States Commissioner and swear out a search warrant. Such a search warrant, and the evidence procured in the course of a search thereunder, would be merely the illegal product of a previous unlawful

search by the federal authorities. See Silverthorne Lumber Co., Inc. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Fraternal Order of Eagles, No. 778 v. United States, 3 Cir., 1932, 57 F.2d 93. See also Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

The judgments of the district court are reversed.