PIERCE, Judge.
Appellant William A. Outten appeals to this Court from a judgment entered against him by the Pinellas County Circuit Court after a trial and finding of guilt by the Court without a jury upon an information charging him with larceny of a Dodge automobile.
Represented by the public defender, Out-ten in open Court waived a trial by jury and consented to trial by the Court. At the outset of the hearing a stipulation of counsel was dictated into the record to the effect that a certain described Dodge automobile had been taken from a parking lot on the night of November 26, 1965, in St. Peters-burg, without the authority of the owner. In addition, only two witnesses testified for the State, E. R. Peterson and R. Abreu. After adjudication of guilt by the Court, defendant Outten was sentenced to a term of imprisonment in the State Prison.
From the evidence, it appears that on the early morning of November 27, 1965, E. R. Peterson, a State Highway Trooper, was-parked on the median between the two highways on Interstate 4 near Orient Road in Hillsborough County. Pursuant to a call from the Highway Patrol Station, he was watching for a blue Dodge automobile headed east on Interstate 4 toward Gainesville. He was to stop the car and inform the occupants thereof that they had left their football tickets back home in Pinellas County. While so parked, he noticed a two-toned blue Dodge automobile pas§.in an easterly direction on the highway. He then caught up with the Dodge car, followed along behind it, and noticed it was occupied by two young men. The car pulled off Interstate 4 and went down an exit road to a stop sign, at which point trooper Peterson to the rear blew his horn, jumped out of his car, walked up to the Dodge, looked in at the driver and asked to check his driver’s license. The driver was one David Lee Polumbo, and-his passenger’sitting in the car was defendant Outten. Polumbo could' not produce a driver’s license, whereupon-the officer ordered them both out of the car and began to question Polumbo. He got no “satisfactory answers” from Polumbo-except that the Dodge belonged to Polumbo’s. brother. The trooper checked with headquarters by radio and ascertained the license tag was “not wanted” although it had actually been issued “on a 1957 Ford.” The trooper got no further identification or “satisfactory information” from Polumbo and then turned and had conversation with. Outten, but stated “I don’t remember the exact conversation with Mr. Outten. I just remember that I got Mr. Outten out of the car, and I did question him and he could’ give me no satisfactory answers. Neither one of the boys could give me satisfactory-answers.”
He thereupon arrested Polumbo and Out-ten for “suspicion of auto theft”, searched’ them, and then transported them in his own car in handcuffs to the Hillsborough County Jail. Inside the jail, after conference with the jailer, Outten was charged witbu “vagrancy”.[1] A few minutes later, according to trooper Peterson, “Outten made an admission to me * * * at one of the-divider gates,” stating that “the car had been stolen”.
About that time, at approximately 9 A.M.,. Hillsborough deputy sheriff Abreu appeared on the scene and in company with trooper-Peterson took Outten “up-stairs” to the interrogation room where, according to-Abreu, “I made him aware of his constitutional rights, that he didn’t have to tell me anything he didn’t want to, and he could have the benefit of the presence of a lawyer, an attorney, if he wanted”. Abreu then continued: “[a]fter we had told him did he want to talk to us about it, he said yes he would. He told us where he had gotten the car. From this car lot in St. Petersburg., And that the car was parked next to a res-- *596 taurant. And he related to us, to me how he had come from Norfolk, Virginia in a bus to Jacksonville, and from Jacksonville to St. Petersburg. And that he had gotten off the bus in St. Petersburg and stayed there all day Friday, and how at night they had gone over there and gotten the car on the used car lot.” Abreu was asked as to Outten’s attitude during this interrogation session, which incidentally lasted only about twenty minutes, and Abreu replied “he was very cooperative and readily talked to us”, that he had “no difficulty in obtaining this admission from him”.
The foregoing sums up the evidence for the State before the trial Judge. Thereupon defense counsel made motion for a finding and adjudication of not guilty, which the Court denied. Motions were then made for the Court to disregard or not consider the admissions or confessions of the defendant, principally upon the grounds of an original unlawful arrest and also failure on the part of the officers to fully or adequately advise the defendant of his constitutional rights before questioning him. As to the “confessional offering” to officer Abreu in the upstairs room the trial Judge dismissed the objection without comment, but as to the statements by the boys to trooper Peterson at the time of arrest and later by Outten to trooper Peterson at the jail “divider gate”, the Judge had some interesting comments. He voiced his conclusions in the following language:
“Now there were actually two arrests made. An arrest on the highway for auto theft, because the officer was suspicious, or as he put it, on suspicion of auto theft. You may get into a question of semantics there. And then the arrest at the Hills-borough County Jail for vagrancy.
“There was not sufficient advice to this man by the arresting officer to make valid any admissions this man might have made to Officer Peterson. The full scale predicate was not laid for the constitutional advisory by him, which brings up this point, that in any event any admission made by this man at the divider gate before going upstairs to the interrogation room is inadmissible evidence, so that admission shall be stricken.”
Thus the Judge held invalid on constitutional grounds any statements made by Out-ten .at the time of the arrest and also his admission as to the car being stolen made right after being booked at “the divider gate”. So the only issue before this Court is as to the validity of the incriminating statements made at the “cooperative get together” in the upstairs interrogation chamber at the Hillsborough jail to deputy Abreu.
Defendant contends here that Outten’s arrest on the highway without a warrant was in its inception illegal, and that therefore any inculpatory statements or confessions thereafter made by Outten were tainted with illegality and therefore inadmissible. In analyzing this contention, we must consider two propositions in logical sequence, first, was the arrest illegal, and secondly, if so, what is the legal status of incriminating statements thereafter made by Outten while in such illegal custody?
Outten was 23 years old, and the driver of the car, Polumbo was 18, although he first told the trooper he was 16. The trooper neither knew nor recognized either one of them. In fact, he was on the alert for another car entirely. He stopped them and made them get out of their car solely on suspicion, which he very candidly admitted. He had no report on their car. The license tag checked out as not having been stolen, they were not speeding or driving recklessly, and in fact the trooper admitted that so far as he knew they were “not violating the law” at all. He had never seen the boys before. He had no “call out” for their arrest. He searched them and found nothing incriminating. He didn’t ask them where they were employed or whether they even had a job. He stated they had no driver’s license (although Polumbo did have a draft card), gave no other identification, had no local addresses, and generally gave no “satisfactory answers.” So he summarily *597 arrested them on the spot for “suspicion of •auto theft”, searched them, handcuffed them, and bundled them into his own car .and took them to the Hillsborough jail, where Outten was arrested a second time, 'booked for “vagrancy”, and then led upstairs to the “interrogation room”. Up to •this time they had been in no way advised of •■their constitutional rights, of their right to •remain silent upon interrogation, their right to counsel, to have counsel present at ■any interrogation, etc.
There can be no doubt that the original arrest by trooper Peterson was unlawful, particularly as to Outten, who was only a passenger in the car. In fact, he had no conversation with Outten at that time that he could remember. We have had occasion recently, in the case of Carter v. State, Fla.App., 199 So.2d 324 filed March 17, 1967, to review somewhat extensively the legality of an arrest without a warrant. The facts here do not begin to make out a case of “probable cause” which we held in the Carter case was a necessary prerequisite to a lawful arrest without warrant.
But the ultimate question in Carter and the cases therein cited was the legality of a search and seizure of personal articles made consequent upon an illegal arrest and admission of such articles later at the trial of the person arrested. It was held that if the original arrest was illegal the resulting search and seizure were likewise illegal and the property obtained thereby inadmissible as evidence.
Here we have a different contention based upon the same premise. There was no property or articles seized or taken from Outten that was of any significance. The only evidence obtained by the officers as a consequence of Outten’s arrest were the incriminating statements obtained from him in the upstairs jail room.
The question is, would such incriminating statements occupy the same legal status of admissibility as articles seized, both deriving from a common source, namely, an unlawful arrest? The answer is, not necessarily so. In 23 C.J.S. Criminal Law § 817(6) a, p. 180, it is stated:
“As a general rule, in the state courts, illegal detention of accused does not of itself render his confession involuntary and inadmissible, and his confession may not be excluded merely because his arrest or custody may have been under invalid process or without any process or legal right. Unless the facts show that an unlawful arrest or confinement, in itself, constitutes such duress as to make a confession made by accused while under arrest or confinement involuntary, the same rules as to admissibility of the confession are applicable as if the arrest were lawful, and a confession obtained during a period of illegal detention is admissible if voluntarily made, and is not the product of the detention.”
The Florida cases, while not precisely in point, incline by inference toward support of the foregoing rule in C.J.S. — that is, as a general rule. Stanley v. State, Fla.App.1960, 124 So.2d 743; Leach v. State, Fla.1961, 132 So.2d 329; Dawson v. State, Fla.1962, 139 So.2d 408; Young v. State, Fla.1962, 140 So.2d 97; Romanello v. State, Fla.App.1964, 160 So.2d 529; Gore v. State, Fla.App.1964, 163 So.2d 37; and Sharretts v. State, Fla.App.1966, 186 So.2d 41. These cases all have one common denominator, namely, the violation by the arresting officer of the provisions of F.S. Section 901.23 F.S.A., which in substance requires that when an arresting officer takes one in custody without a warrant, he shall without unnecessary delay take such person before the nearest or most accessible magistrate. Reliance is then had upon the opinion of the U.S. Supreme Court in McNabb v. United States, 318 U.S. 332, 333, 63 S.Ct. 608, 87 L.Ed. 819, which held that where an arresting officer failed to comply with Federal statutes comparable to F.S. Section 901.23 F.S.A. aforesaid, namely, 18 U.S.C.A. § 595, 18 U.S.C.A. § 593, 5 U.S.C.A. § 300a, any confession obtained or derived from the defendant was inadmissible in evidence. In *598 the cited cases, the Florida courts all refused to follow the rule in McNabb for the reason that “[t]he McNabb rule as to admissibility of confessions is a rule of Federal procedure to be followed by Federal courts and has no binding effect on State courts.”[2] Young v. State, supra.
But any contention based upon F.S. Section 901.23 F.S.A. would not necessarily bear upon the specific point here involved, because there it was the undue detention after arrest and failure to produce the defendant expeditiously before a magistrate that was involved, rather than the unlawful arrest ah initio as here. In some of the cited cases, in fact, the accused was actually arrested under a valid warrant and the contention as to failure to produce the defendant before a magistrate was made under F.S. Section 901.06 F.S.A., which is the same as Section 901.23 except that the former deals with arrest upon warrant while the latter applies to arrest without warrant. Young v. State, supra; Leach v. State, supra. While there is no Florida case definitive of the exact point, we would assume that the general rule in 23 C.J.S. supra, would apply in Florida.
But even so, the rule of admissibility is not absolute, and must admit of some exception or modification. Thus in 23 C.J.S. Criminal Law § 817(6) a, p. 184, it is said:
“However, the illegality of arrest, confinement, or custody is a circumstance to be considered in determining whether a confession has been unlawfully coerced, and it is proper to take into consideration delay in arraignment, beyond that permitted by law. Illegal detention in conjunction with other forms of coercion may invalídate a confession given during such detention, and the circumstances of the illegal restraint may be such as to show that the confession was obtained by duress and render it inadmissible.”
Voluminous cases- from all jurisdictions, are cited in support of the text. The 1st District Court, in Romanello v. State, supra, text 160 So.2d 532, had this to say:
“Appellant next contends that failure to take him before a committing magistrate ' following his arrest rendered his-later statements and admissions inadmissible in evidence. The courts have consistently rebuked .law enforcement officials for failure to present one accused' of crime before a magistrate ‘without unnecessary delay’ as provided by section 901.23, Florida Statutes, F.S.A. It is the rule, however, that due process of law is not violated in such instances unless it is shown that the delay in itself resulted in the confession under attack, and it will not be presumed that such was the-case.”
And this 2nd District Court, in Sciortino v. State, Fla.App.1959, 115 So.2d 93, text 95, stated as follows:
“ * * * it is now the great weight of authority that confessions of parties charged with crime should be acted on by courts and juries with great caution,, especially where the party is under arrest when the confession is made. Indeed, an extrajudicial confession of guilt, standing alone, will not authorize a conviction on a criminal charge, even though believed by the jury. 13 Fla.Jur., Evidence,. § 423.”
The trend of current judicial opinion is unmistakably detected in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, where the U. S. Supreme Court, speaking through Mr. Justice Brennan, held as follows (text 83 S.Ct. 416):
“In order to make effective the fundamental constitutional guarantees of * * * and inviolability of the person, Boyd v. United States, 116 U.S. 616, 6 *599 S.Ct. 524, 29 L.Ed. 746, this Court held nearly half a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. The exclusionary prohibition extends as well to the indirect as the direct products of such invasions.
* Jfí * * ‡
“The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734, that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of ‘papers and effects.’ Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies. McGinnis v. United States, 1 Cir., 227 F.2d 598. Thus, verbal evidence which derives so immediately from an unlawful entry and •an unauthorized arrest as the officers’ action in the present case is no less the ‘fruif of official illegality than the more common tangible fruits of the unwarranted intrusion. See Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690. Nor do the policies underlying the exclusionary ride invite any logical distinction between physical and verbal evidence. Either in terms of deterring lawless conduct by federal officers, Rea v. United States, 350 U.S. 214, 76 S.Ct. 292, 100 L. Ed. 233, or of closing the doors of the federal courts to any use of evidence unconstitutionally obtained, Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669, the danger in relaxing the exclusionary rules in the case of verbal evidence would seem too great to warrant introducing such a distinction." (Emphasis supplied.)
And in Upshaw v. United States, 335 U. S. 410, 69 S.Ct. 170, 93 L.Ed. 100, the 4th headnote is as follows:
“The practice of arresting, holding, and questioning a person on mere suspicion is in violation of law and confessions thus obtained are inadmissible." (Emphasis supplied.)
As regards incriminating statements obtained from in-custody suspects unreasonably or unlawfully held, and not produced forthwith before a magistrate, the U. S. Supreme Court takes variant views between the application of Federal law to Federal prisoners and the application of State laws to State prisoners. This is illustrated by the opinions of the high Court in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, and Fikes v. State of Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed. 2d 246, both opinions being handed down at the samé October 1956 term.
In Mallory, which was a Federal in-custody case, the 3rd headnote is as follows :
“In order adequately to enforce requirement of prompt arraignment, it is deemed necessary to render inadmissible incriminating statements solicited from defendants during a period of unlawful detention. Fed.Rules Crim.Proc. rule 5 (a), 18 U.S.C.A.”
In Fikes, which was a State in-custody case, the 3rd headnote is as follows:
“Under Alabama law, violation of statutory requirement that arrested person be taken before magistrate without unnecessary delay does not render inadmissible a confession secured during the resulting detention, but is relevant circumstantial evidence in inquiry as to physical or psychological coercion. U.S. C.A.Const. Amend. 14; Code Ala.1940, Tit. 15, § 160.”
The disparate views of the high Court are thus brought into discernible focus. Undue detention in Federal cases renders the confession inadmissible per se, not be *600 cause of the due process clause of the 14th Amendment, but because of the federal rule of evidence founded in Rule 5(a) of the Federal Rules of Criminal Procedure. Undue detention in State cases does not render the confession inadmissible per se, but such circumstance must be taken into consideration in determining admissibility, from the standpoint of whether or not the detention and confession were so closely interwoven in cause-and-effect, in point of time, and in circumstance, both physical and psychological, as to make the detention the probably inducing factor of the confession. In such situation the confession must go out, but not because of the 14th Amendment, which, if applicable to State cases, would vitiate the statements per se. See also, Gallegos v. State of Nebraska, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86; Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469.
We think the above rule as to State in-custody cases, sanctioned by the U. S. Supreme Court, is the appropriate yardstick to be followed in Florida courts, and hence in this case. Tested by such rule, the question is, was the unauthorized detention of Outten, in combination with the other factors and circumstances existing after the arrest, such as to warrant rejection of the confession secured in the upstairs jail room? The question is admittedly a close one, but fortunately we do not have to ground our disposition of the case here on such a narrow premise.
It will be recalled, from a review of the trial proceedings hereinbefore depicted, that the trial Court itself held inadmissible the incriminating statements made by the defendant at the “divider gate” in the jail immediately after he had been “booked” upon the substituted charge of “vagrancy”. Such ruling was eminently proper in the light of the recent decisions of this Court in Williams v. State, Fla.App. 1966, 188 So.2d 320, and Collins v. State, Fla.App., 197 So. 2d 574, opinion filed March 15, 1967, and the many cases therein cited, including Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.
The confession in the upstairs interrogation room of the jail was obtained immediately after the tainted incriminating statements were elicited at the “divider gate”. Under such circumstances, both the Florida and the U. S. Supreme Courts have held that the subsequent confession is likewise inadmissible for the reason that the “debilitating influences” of the first confession are presumed to carry over and permeate the subsequent interrogation— unless it affirmatively appears that the improper influences have been effectually removed, which does not here exist. See Coffee v. State, 1889, 25 Fla. 501, 6 So. 493; Murray v. State, 1889, 25 Fla. 528, 6 So. 498; McNish v. State, 1903, 45 Fla. 83, 34 So. 219; Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948; Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481.
In Coffee, the Florida Supreme Court held (6 So. text 496) :
“There is another rule of law, and it has its foundation in justice, and that is that when a confession has, in the first place, been made under illegal influences, such influences will be presumed to continue and color all subsequent confessions,[3] unless the contrary is clearly
shown.”
In Murray, the same Court held (6 So. text 500):
“When the confessions of the defendant were offered in evidence and objected to, *601 before they could be admitted legally, it was incumbent upon the state to most clearly show that the first confession was voluntary; for where improper means are resorted to to induce a confession, and the confession is made through hope of favor or fear of punishment, it is a presumption of law that all subsequent confessions[4] by the accused as to the same offense are made under the influences which induced the first confession; and, until this presumption is removed, the confession cannot legally go to the jury. See Coffee v. State, ante, 493, (decided at the present term,) and numerous cases there cited.”
And the same Court in McNish (34 So. text 219) :
“This court has held strictly to the rule that confessions of the accused should be acted upon with great caution, and it must be clearly shown that, when a confession has once been obtained through illegal influence, such influence has been removed before a subsequent confession [5] may be received.”
In Lyons, the U.S. Supreme Court (64 S.Ct. text 1213):
“ * * * the fact that the earlier statement was obtained from the prisoner by coercion is to be considered in appraising the character of the later confession. The effect of earlier abuse may be so clear as to forbid any other inference than that it dominated the mind of the accused to such an extent that the later confession is involuntary. If the relation between the earlier and later confession is not so close[6] that one must say the facts of one control the character of the other, the inference is one for the triers of fact and their conclusion, in such an uncertain situation, that the confession should be admitted as voluntary, cannot be a denial of due process.”
And lastly, in Leyra, the same high Court (74 S.Ct. text 719):
“On the first appeal the New York Court of Appeals held that the admissions petitioner made to the psychiatrist were so clearly the product of ‘mental coercion’ that their use as evidence was inconsistent with due process of law. On the second appeal, however, that court held that the subsequent confessions here challenged were properly admitted. The Court of Appeals for the Second Circuit held the same thing. With this holding we cannot agree. Unlike the circumstances in Lyons v. State of Oklahoma, 322 U.S. 596, 602, 603, 64 S.Ct. 1208, 1212, 88 L.Ed. 1481, the undisputed facts in this case are irreconcilable with petitioner’s mental freedom ‘to confess to or deny a suspected participation in a crime’, and the relation of the confessions made to the psychiatrist, the police captain and the state prosecutors, is ‘so close [7] that one must say the facts of one control the character of the other * * *.’ All were simply parts of one continuous process.”
From the foregoing authorities, it conclusively appears that the “upstairs room” confession, occurring only a matter of minutes after the vitiated “divider gate” incriminating statements, was so close that it cannot be said the improper influences of the downstairs statements had been completely and effectually removed before the upstairs statements were elicited. The latter confession was therefore improperly admitted and considered by the Court, and the judgment appealed from must accordingly be—
Reversed and the cause remanded.
ALLEN, C. J., and KANNER, J., (Ret.), concur.

. Polumbo was “booked * * * for no driver’s license and operating a vehicle with an improper tag”, but the record is silent as to what happened to Polumbo. thereafter.

. Curiously the-same contention continues to be made in Florida state court cases based, upon the rule in McNabb, although the McNabb rule was expressly repudiated by the Florida Supreme Court in July, 1943, a scant 4 months after McNabb was decided, in Finley v. State, 1943, 153 Fla. 394, 14 So.2d 844, a case with which the writer is personally familiar.

. 2 days lapse.

. Opinion not clear but apparently the lapse was several days.

. Lapse of apparently a few days.

. Lapse of “a full twelve hours.”

. Lapse of “a period of about 5 hours”.