UNITED STATES COURT OF APPEALS
                                          FOR THE FIRST CIRCUIT
                                                  _________________________
No. 97-1848
                                                          DARRYL W. ELLIOTT,
                                                       Plaintiff, Appellant,
                                                                              v.
                                              S.D. WARREN COMPANY, ET AL.,
                                                     Defendants, Appellees.
                                                  _________________________
                          APPEAL FROM THE UNITED STATES DISTRICT COURT
                                                  FOR THE DISTRICT OF MAINE
                           [Hon. Morton A. Brody, U.S. District Judge]
                                                  _________________________
                                                                         Before
                                                    Selya, Stahl and Lynch,
                                                              Circuit Judges.
                                                  _________________________
            James G. Fongemie, with whom James J. MacAdam and McTeague,
Higbee, MacAdam, Case, Watson & Cohen were on brief, for appellant.
            John J. Aromando, with whom Jared S. des Rosiers and Pierce
Atwood were on brief, for appellee S.D.Warren Co.
            Leonard W. Langer, with whom Marshall J. Tinkle and Tompkins,
Clough, Hirshon & Langer, P.A. were on brief, for appellees Rust
Engineering                       &        Construction,                          Inc.             and           Rust             International
Corporation.
                                                  _________________________
                                                             January 13, 1998
                                                  _________________________
                         SELYA, Circuit Judge. After unsuccessfully prosecuting
a personal injury suit, plaintiff-appellant Darryl W. Elliott
invites us to set aside a jury verdict in favor of the defendant
S.D. Warren Company (Warren) and to reverse a summary judgment in
favor of two other defendants (whom we sometimes shall refer to
collectively as "Rust").                                             Discerning no error, we decline both
invitations.
I. BACKGROUND
                         Warren hired Rust to design, build, and manage the
erection of an addition to its paper mill in Hinckley, Maine.                                                                                           That
firm in turn subcontracted with its wholly-owned subsidiary,
Allegheny Industrial Electrical, Inc. (Allegheny), to install
electrical conduit.                                      Elliott, an Allegheny employee, severely
injured his left wrist while working at the job site on July 21,
1990. The injury occurred when Elliott caught his hand between a
railing and an adjacent piece of electrical conduit on a stairway
in a structure under construction.                                                            On Elliott's theory of the
case, a lack of adequate clearance at the pinchpoint between the
railing and the conduit caused him to catch his hand, pull back,
fall, and injure himself.
                         The appellant collected workers' compensation benefits
from his employer.                                 Several years later, he settled his workers'
             The plaintiff labelled these defendants "Rust Engineering and
Construction, Inc." and "Rust International Corporation."                                                                                                  The
identities and interrelationship of the various Rust-related
entities bear tangentially on the propriety of the order granting
summary judgment. We discuss that facet of the matter in Part III,
infra.
                                                                                2
compensation claim and brought a third-party tort suit against
Warren and Rust in a Maine state court.                                                                       In his complaint, he
alleged that Warren, as the owner of the premises and the
organization having control over the area where the accident
occurred, had failed both to maintain a safe workplace and to warn
of a dangerous condition.                                            At the same time, he accused Rust of
negligently installing the stairway and conduit.                                                                                              Invoking
diversity jurisdiction                                          the appellant is a citizen and resident
of New York, Warren is a Pennsylvania corporation that maintains
its principal place of business in Massachusetts, and Rust is
chartered in Delaware and headquartered in Alabama                                                                              the defendants
removed the case to Maine's federal district court.                                                                               See 28 U.S.C.
§§ 1332(a), 1441(a).
                         In due season, the district court granted summary
judgment in favor of Rust, see Fed. R. Civ. P. 56(c), holding that
Rust was insulated from liability by the terms of the release that
the appellant executed when he settled his workers' compensation
claim. The lawsuit proceeded to trial against Warren and the jury
returned a verdict for the defendant. This appeal ensued.
II. THE JURY VERDICT
                         We first consider the appeal insofar as it pertains to
the take-nothing jury verdict.
                                                     A. Negligence Per Se.
                         The appellant's most substantial claim of error concerns
the district court's instruction to the jury in regard to evidence
which indicated that, at the spot where Elliott caught his hand,
                                                                                3
the distance between the railing and the electrical conduit was
three-quarters of an inch, rather than the three inches required by
a federal regulation promulgated by the Occupational Safety and
Health Administration (OSHA). See 29 C.F.R. § 1910.23(e)(6) (1990)
(stipulating that "[a]ll handrails and railings shall be provided
with a clearance of not less than 3 inches between the handrail or
railing and any other object").                                                             Citing Pratico v. Portland
Terminal Co., 783 F.2d 255 (1st Cir. 1985), the appellant requested
the district court to charge the jury that the violation of an OSHA
regulation constitutes negligence per se.                                                                          The court refused,
instead telling the jurors that they might consider any such
violation "as evidence of negligence," whilst "evaluat[ing] the
weight to be given to that violation along with all the other
evidence in the case in determining whether the defendant was in
fact negligent." The appellant assigns error.
                         Pratico involved a cause of action that arose under the
Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60.                                                                                                 In
that context, we held that the violation of a regulation validly
promulgated by OSHA under the Occupational Safety and Health Act
(OSH Act), 29 U.S.C. §§ 651-678, could be deemed negligence per se.
783 F.2d at 266-67.
                         At the time this court decided Pratico, we had very
little guidance from our sister circuits.                                                                                See id. at 264
(identifying the Fifth Circuit as "the only circuit court to have
addressed this issue") (citing, inter alia, Rabon v. Automatic
Fasteners, Inc., 672 F.2d 1231 (5th Cir. Unit B 1982), and Melerine
                                                                                4
v. Avondale Shipyards, Inc., 659 F.2d 706 (5th Cir. Unit A 1981)).
In the past twelve years, however, at least four other courts of
appeals have considered when, if ever, a violation of an OSHA
regulation might constitute negligence per se. See Ellis v. Chase
Communications, Inc., 63 F.3d 473, 477-78 (6th Cir. 1995); id. at
482-83 (Wellford, J., concurring); Robertson v. Burlington N. R.R.
Co., 32 F.3d 408, 409-11 (9th Cir. 1994); Ries v. National R.R.
Passenger Corp., 960 F.2d 1156, 1160-65 (3d Cir. 1992); Albrecht v.
Baltimore & Ohio R.R. Co., 808 F.2d 329, 332-33 (4th Cir. 1987).
Three of these four courts have held squarely that, because the OSH
Act does not create a private right of action, a violation of an
OSHA regulation never can be equated with negligence per se. See
Robertson, 32 F.3d at 410-11; Ries, 960 F.2d at 1158-65; Albrecht,
808 F.2d at 332-33. The Sixth Circuit, like the Fifth, leaves open
the possibility that a violation of an OSHA regulation may, in some
cases governed by federal law, constitute negligence per se, see
Ellis, 63 F.3d at 477; Rabon, 672 F.2d at 1238, but it is rare in
either circuit for a court actually to uphold a finding of
negligence per se on this basis.                                                                  Silhouetted against this
              The OSH Act provides in relevant part:
                         Nothing in this chapter shall be construed to
                         supersede                   or         in         any          manner               affect               any
                         workmen's compensation law or to enlarge or
                         diminish or affect in any other manner the
                         common law or statutory rights, duties, or
                         liabilities of employers and employees under
                         any law with respect to injuries, diseases, or
                         death of employees arising out of, or in the
                         course of, employment.
29 U.S.C. § 653(b)(4).
                                                                                5
backdrop, the Pratico holding is of questionable validity.
                         We need not pursue the status of Pratico today.                                                                                   For
present purposes, it suffices to note that Pratico involved an FELA
claim and the case's holding is properly limited to causes of
action brought under that statute.                                                               The case at bar does not
involve a cause of action arising under federal law, but, rather,
a cause of action arising under Maine's common law.                                                                                        This is a
dispositive difference.
                         In Pedraza v. Shell Oil Co., 942 F.2d 48 (1st Cir. 1991),
after first remarking that the OSH Act creates no private right of
action, we cited Albrecht and held that OSHA regulations should be
viewed as "prescrib[ing] standards of care relevant in common law
negligence actions"; that in such actions, regulations promulgated
under the OSH Act furnish evidence of the standard of care; and
that proof of a violation of those regulations does not constitute
negligence per se.                                      See id. at 52.                                   As the district court
recognized, Pedraza, not Pratico, is the relevant First Circuit
precedent for purposes of a garden-variety tort suit.
                         To cinch matters, in a diversity action a federal court
is constrained to apply state substantive law, see Coyne v. Taber
Partners I, 53 F.3d 454, 457 (1st Cir. 1995); Daigle v. Maine Med.
Ctr., Inc., 14 F.3d 684, 689 (1st Cir. 1994), and, accordingly,
Maine law controls here.                                                 Generally, in diversity cases the
evidentiary effect accorded the violation of a safety rule is a
matter of state law. See Lones v. Detroit, Toledo & Ironton R.R.
Co., 398 F.2d 914, 917-18 (6th Cir. 1968).                                                                             At best, an OSHA
                                                                                6
regulation is on a par with a statute, and under Maine's common law
the violation of a safety statute is merely evidence of negligence,
not negligence per se. See French v. Willman, 599 A.2d 1151, 1152
(Me. 1991); Dongo v. Banks, 448 A.2d 885, 889-90 (Me. 1982). Thus,
by instructing the jury that it might consider a discerned OSHA
violation as evidence of Warren's negligence                                                                         no more, no less
the district court gave the jurors proper guidance under the
governing law.
                                              B. Other Jury Instructions.
                         The appellant next asserts that the district court erred
in two related instances by refusing to incorporate specific
language into its jury instructions. The appellant requested that,
on the issue of Warren's control over the construction site, the
judge (1) recount for the jury a detailed twelve-point checklist
itemizing those elements that he contended various courts around
the country have found to support a finding of control; and (2)
tell the jury that, if it concluded that Warren had retained
control over the job site, then Warren had a "nondelegable" duty to
furnish Allegheny's employees with a safe and suitable workplace.
The district court declined to give either instruction in haec
verba, but instead advised the jury:
                                     A contract between an owner and an
                         independent                                contractor                               allocating
                         responsibility                              between                    themselves                        for
                         maintaining safe premises . . . does not
                         relieve the owner of liability to invitees for
                         injuries                  sustained                   as         a       result               of         any
                         dangerous conditions known or discoverable by
                         the owner of the property.
                                                                                7
                                     The defendant in this case contracted
                         with Rust Engineering to construct its No. 3
                         paper machine building.                                          This fact does not
                         absolve the defendant for injuries sustained
                         by its invitees on its premises while the
                         construction project was in progress if the
                         defendant retained control of any part of the
                         work. One who entrusts work to a contractor,
                         but retains control of any part of the work,
                         is subject to liability for physical harm to
                         others that is caused by his failure or its
                         failure to exercise control with reasonable
                         care. If you find that the defendant retained
                         control of the construction site, then it is
                         the duty of the defendant to furnish the
                         employees of plaintiff's employer with a safe
                         and suitable site.
                         We reject the appellant's claims of error on both
procedural and substantive grounds.                                                       From a procedural standpoint,
the appellant did not object in the prescribed manner and at the
appointed time either to the district court's refusal to give his
requested instructions or to the charge actually given. See Fed.
R. Civ. P. 51.                          Although he did make a general reference to "what
we discussed earlier today"                                                  presumably referring to a chambers
conference                      when the district court called counsel to sidebar near
the end of the charge, we have held with echolalic regularity that
strict compliance with Rule 51 is mandatory and that a failure of
compliance will not be excused merely because the defaulting party
brought the same matter to the trial judge's attention more
specifically at some other time.                                                      See, e.g., Poulin v. Greer, 18
              Rule 51 provides in pertinent part:
                                     No party may assign as error the giving
                         or the failure to give an instruction unless
                         that party objects thereto before the jury
                         retires to consider its verdict, stating
                         distinctly the matter objected to and the
                         grounds of the objection.
                                                                                8
F.3d 979, 982 (1st Cir. 1994); United States v. Nason, 9 F.3d 155,
160-61 (1st Cir. 1993); McGrath v. Spirito, 733 F.2d 967, 968-69
(1st Cir. 1984).                              As these cases illustrate, an objection raised
emphatically in chambers before delivery of the charge does not,
without more, preserve for review issues relating to the charge.
                         To be sure, even a forfeited error is amenable to plain-
error review. See Wells Real Estate, Inc. v. Greater Lowell Bd. of
Realtors, 850 F.2d 803, 809 (1st Cir. 1988); United States v.
Griffin, 818 F.2d 97, 100 (1st Cir. 1987).                                                                             But that step is
unnecessary where, as here, no substantive error occurred.                                                                                                 See
United States v. McKeeve, ___ F.3d ___, ___ (1st Cir. 1997) [No.
96-2273, slip op. at 17].                                            Leaving aside the procedural default,
the standard of review is familiar:
                                     The trial court's refusal to give a
                         particular instruction constitutes reversible
                         error only if the requested instruction was
                         (1) correct as a matter of substantive law,
                         (2) not substantially incorporated into the
                         charge as rendered, and (3) integral to an
                         important point in the case.
United States v. DeStefano, 59 F.3d 1, 2 (1st Cir. 1995).
                         The appellant easily satisfies the third prong of this
test. After all, the intertwined issues of Warren's control over
the premises and the duty it owed to Elliott while he was working
at the construction site are integral to the appellant's theory of
the case.                   See Hanson v. Madison Paper Co., 564 A.2d 1178, 1179
(Me. 1989) (discussing a property owner's duty under Maine law to
make business premises safe for invitees); Baker v. Mid Maine Med.
Ctr., 499 A.2d 464, 467 (Me. 1985) (similar). Even if we assume,
                                                                                9
however, that the first prong of the test also was satisfied, the
appellant nonetheless stumbles over the second prong.
                         A trial court is obliged to inform the jury about the
applicable law, but, within wide limits, the method and manner in
which the judge carries out this obligation is left to his or her
discretion. Consequently, though both sides have a perfect right
     indeed, a duty                              to advise the judge what type of instructions
they believe are fitting, neither is entitled to dictate the turn
of phrase the judge should use to acquaint lay jurors with the
applicable law. See United States v. McGill, 953 F.2d 10, 12 (1st
Cir. 1992) (warning that no litigant has a license "to put words in
the judge's mouth"). "So long as the charge sufficiently conveys
the [party's] theory, it need not parrot the exact language that
the [party] prefers." Id.
                         When, as now, a disappointed suitor asks an appellate
court to scrutinize a trial judge's word choices, "the central
inquiry reduces to whether, taking the charge as a whole, the
instructions adequately illuminate the law applicable to the
controlling issues in the case without unduly complicating matters
or misleading the jury."                                               DeStefano, 59 F.3d at 3 (citations
omitted). In this instance, we answer that inquiry affirmatively.
Although the district court declined either to define legal
concepts with great exactitude or to adopt the appellant's
suggested twelve-point checklist, its charge made clear that Warren
             Without belaboring the point, we note that it is problematic
whether Maine law incorporates all twelve of the points contained
in the appellant's proposed multi-part instruction.
                                                                              10
owed Elliott a duty of care if, and to the extent that, Warren
retained control over any part of the workplace.                                                                                     No more was
exigible. See, e.g., Kelliher v. General Transp. Servs., Inc., 29
F.3d 750, 753 (1st Cir. 1994) (explaining that further instructions
are unnecessary when the judge "had already sufficiently covered
the same ground"); United States v. De La Cruz, 902 F.2d 121, 122-
23 (1st Cir. 1990) (discussing a trial court's discretion in
establishing                        an         appropriate                       level             of         generality                     in         jury
instructions). By like token, even though the court refrained from
using the term "nondelegable," as the appellant obviously would
have preferred, it adequately instructed the jurors anent Warren's
independent duty of care.
                         Of course, a trial judge's discretion in framing the
issues for the jury is not unbridled, and an arbitrary refusal to
amplify a hard-to-grasp concept might well invite reproof. Here,
however, the district court had plausible reasons for refusing to
augment its instructions.                                                 For example, Judge Brody saw the
proffered checklist as a source of potential confusion and thus
determined that, rather than run this risk, it would be preferable
to present a more general statement of the law.                                                                                    This sort of
judgment call is uniquely within the trial judge's discretion, and
we are reluctant to second-guess it.                                                                     Similarly, Judge Brody
eschewed the term "nondelegable" because he reasonably feared such
an allusion might mislead jurors into thinking that strict
liability applied or that Warren was liable vicariously for the
independent negligence of Allegheny.                                                        This decision, too, was well
                                                                              11
within the realm of his discretion. See Kelliher, 29 F.3d at 752
(explicating the trial judge's role in determining whether proposed
jury instructions tend to confuse or mislead the jury on the
controlling issues); Brown v. Trustees of Boston Univ., 891 F.2d
337, 353 (1st Cir. 1989) (same).
                         The appellant makes a last-ditch argument that the
jurors' submission of a mid-deliberation question proved the need
for additional clarification on the nondelegability of Warren's
duty.                 We do not agree.                                     The judge's original instructions
accurately envisioned that the jury would wrestle with the issue of
Warren's independent duty of care to invitees on its premises
during the currency of the construction project.                                                                                      Rather than
elaborate on these initial, entirely correct instructions (which,
along with the rest of the charge, had been typed and furnished for
use in the jury room during deliberations), Judge Brody elected to
refer the jury to the original formulation. As a general rule, the
necessity for giving a supplementary instruction to the jury is a
matter within the sound discretion of the trial court.                                                                                   See United
States v. Castenada, 555 F.2d 605, 611-12 (7th Cir. 1977)
(explaining that a judge, in responding to a jury request for
reinstruction, may either supplement or simply reaffirm the
original instruction). In this instance, we descry no valid basis
for questioning the judge's decision to abjure a supplementary
              The question read:
                                     If we feel that Allegheny is negligent
                         and S.D. Warren is in control, would the
                         negligence carry over to S.D. Warren?
                                                                              12
instruction.
                         We have said enough on this score.                                                                   The challenged
instructions accurately stated the law, sufficiently informed the
jury of the appellant's theory of the case, and worked no unfair
prejudice to either party.                                               As long as a jury charge satisfies
these criteria, "the court's choice of language is largely a matter
of discretion." DeStefano, 59 F.3d at 2.                                                                      So it is here.
                                               C. Reference to Insurance.
                         Prior to trial, Warren, citing Fed. R. Evid. 403
(generally permitting the exclusion of evidence on the ground of
undue prejudice) and Fed. R. Evid. 411 (specifically permitting the
exclusion                    of         evidence                  of         liability                   insurance                    in         certain
circumstances), moved in limine to exclude any mention of
indemnification or liability insurance. The motion referred to the
indemnification                            and          insurance                    provisions                     contained                   in         the
construction contract between Warren and Rust.                                                                       The district court
granted the motion provisionally, subject to the appellant's right
to revisit the issue during the trial.
                         In his case in chief, the appellant offered the
construction contract into evidence.                                                             Everyone realized that the
contract constituted relevant evidence because it contained
provisions setting forth on-site responsibilities for construction
and safety.                      The court admitted it, without redaction, as a full
exhibit.                   Both parties made use of the contract during their
examination of witnesses, especially in reference to whether Warren
had retained control over the construction site.                                                                               The appellant,
                                                                              13
however, did not ask the court to reconsider its order in limine,
and neither party mentioned the indemnification and liability
insurance clauses before the jury.
                         At the close of all the evidence, the appellant seized
upon the fact that everyone apparently had overlooked the need for
redaction.                     His counsel requested leave of court to comment in
summation                   on         the          unredacted                     indemnification                             and          insurance
provisions. The court denied the request. The appellant assigns
error, maintaining that the comments should have been allowed
because the entire contract, including those provisions, was in
evidence. We conclude that, in the peculiar circumstances of this
case, the district court acted within its authority in limiting the
use to which the contract could be put.
                         The touchstone of our analysis is Fed. R. Evid. 105,
which states in pertinent part:
                         When evidence which is admissible as to one
                         party or for one purpose but not admissible as
                         to another party or for another purpose is
                         admitted, the court, upon request, shall
                         restrict the evidence to its proper scope and
                         instruct the jury accordingly.
Fed. R. Evid. 105.                                      This rule "provides the trial court with
substantial control over both the admissibility of evidence and of
limitations on its use." 1 Jack B. Weinstein & Margaret A. Berger,
Weinstein's Federal Evidence § 105.02[1], at 105-6 (Joseph M.
McLaughlin ed., 2d ed. 1997). Although it would have been better
practice                   for           the           district                  court              to          have            redacted                   the
indemnification and insurance provisions when it accepted the
contract as a full exhibit, the record leaves little room to doubt
                                                                              14
that the parties understood that the admission of the exhibit did
not signify a withdrawal or relaxation of the court's earlier in
limine ruling. The appellant's claim that defense counsel waived
the in limine ruling by failing to object to the introduction of
the unredacted contract into evidence appears to be wishful
thinking.                   At any rate, an affirmative waiver typically involves
the purposeful relinquishment of a known right, and the self-
serving claim that Warren intended to relinquish the benefit of the
in limine ruling is without support in the record.
                         We will not paint the lily. The parties understood that
indemnification and insurance evidence had been banned, and the
appellant does not now contest the validity of that prohibition.
Taking that as a given, the trial court acted appropriately in
refusing to allow the appellant to undercut the in limine ruling by
taking advantage of a momentary lapse.
III. THE SUMMARY JUDGMENT
                         The final component in the appellant's asseverational
array is his claim that the district court improperly granted
summary judgment in favor of Rust.                                                               Some additional facts are
needed to put this claim into perspective.
                         At the time Warren decided to build the paper mill
addition, it contracted with Rust Engineering Company, a wholly-
owned             subsidiary                    of        Rust            International                         Corporation.                            Rust
Engineering then subcontracted the electrical work to its wholly-
owned subsidiary, Allegheny.                                                 To complicate matters further, in
March of 1995                                    well after the accident but prior to the
                                                                              15
institution                      of         the          third-party                      suit                    Rust            International
Corporation changed its name to Rust Engineering and Construction,
Inc.             At about the same time the beneficial ownership of Rust
Engineering Company apparently changed, and that company is now
known as TRECO Construction Services, Inc.
                         On July 11, 1996, the appellant settled his workers'
compensation claim against Allegheny, surrendering all future
benefits in exchange for a lump sum payment of $215,000.                                                                                                     As
consideration for that stipend, the appellant executed a release in
which he agreed to:
                         [R]emise, release and forever discharge Rust
                         Engineering,                         the           Employer                   and           American
                         Fidelity/MGA, the Insurance Carrier, plus
                         their subsidiaries, successors, and related
                         companies,                     present                 and           former               officers,
                         agents, employees and attorneys (hereinafter
                         referred to as `Releasees'), of and from any
                         and           all            actions,                   claims                and           damages,
                         including, but not limited to, claims to
                         permanent                            impairment,                              compensation,
                         rehabilitation, attorneys' fees, medical and
                         other expenses, . . . or any other action, of
                         any kind, in law or equity, which Releasor now
                         has or ever had against the Releasees arising
                         out of or related in any way to the Releasor's
                         employment at Rust Engineering, or to the
                         claimed work-related injury of 7/21/90. . . .
                         In their motion for brevis disposition, the Rust
defendants argued that this release insulated them from tort
liability for the appellant's work-related injuries.                                                                                The district
court agreed, finding the release's language to be clear,
unambiguous, and entirely dispositive.                                                                   Accordingly, the court
granted summary judgment.
                         We review an order granting summary judgment de novo,
                                                                              16
reading the record "in the light most congenial to the nonmovant
and resolving all reasonable inferences in that party's favor."
Hachikian v. FDIC, 96 F.3d 502, 504 (1st Cir. 1996).                                                                                       To affirm
such an order, we must be satisfied that there is no genuine
dispute concerning any material fact and that the movant is
entitled to judgment as a matter of law. See Burnham v. Guardian
Life Ins. Co., 873 F.2d 486, 488 (1st Cir. 1989).                                                                                 Demonstrating
the existence of a trialworthy issue demands "more than effusive
rhetoric and optimistic surmise."                                                         Cadle Co. v. Hayes, 116 F.3d
957, 960 (1st Cir. 1997).
                         The crux of the appellant's argument involves the
interpretation of the release.                                                     We have recognized that summary
judgment is an appropriate vehicle for resolving contract-
interpretation disputes when the contract language is not infected
by some material ambiguity.                                              See Newport Plaza Assocs. v. Durfee
Attleboro Bank (In re Newport Plaza Assocs.), 985 F.2d 640, 644
(1st Cir. 1993); FDIC v. Singh, 977 F.2d 18, 21 (1st Cir. 1992);
see also Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083
(1st Cir. 1989) (explicating the same rule in directed verdict
context). On this basis, summary judgment was proper here.
                         The question whether a contract term is ambiguous is one
of law for the judge.                                      See, e.g., Allen v. Adage, Inc., 967 F.2d
695, 698 (1st Cir. 1992); Town of Lisbon v. Thayer Corp., 675 A.2d
514, 516 (Me. 1996). In this instance, the appellant's principal
point is that he did not intend to release the particular Rust
entities that he sued from tort liability by settling his workers'
                                                                              17
compensation claim with Allegheny; and that, in all events, the
release of "Rust Engineering" is ambiguous, because no single
company bears that exact name. To be sure, some names are close:
Allegheny is a wholly-owned subsidiary of Rust Engineering Company
(now known as TRECO Construction Services, Inc.), and, since March
of 1995, a firm called Rust Engineering & Construction, Inc.
(formerly Rust International Corporation) has been in existence.
In the appellant's view, these close, but inexact, corporate names
merely highlight the pervasive ambiguity.
                         It is black-letter law that the meaning of an unambiguous
writing must be derived exclusively from within its four corners.
See Portland Valve, Inc. v. Rockwood Systems Corp., 460 A.2d 1383,
1387 (Me. 1983).                                Thus, a contracting party's professed intent
cannot contradict the inexorable purport of written contractual
provisions. See Newport Plaza Assocs., 985 F.2d at 646-47. Here,
the language of the release is broad, enveloping, and, in the final
analysis, perfectly plain.                                              The proliferation of "Rusts" adds a
complicating note, but it does not engender any material ambiguity.
No matter which company the label "Rust Engineering" signifies, the
release goes on to shield all "related companies."                                                                                                By any
interpretation, then, the Rust entities that the appellant sued are
within the shelter afforded by the release.
                         The appellant's fallback position is no more tenable. He
suggests that the third-person plural possessive "their" (as in
"their subsidiaries, successors, and related companies") refers
solely to the singular "American Fidelity/MGA."                                                                              This suggestion
                                                                              18
not only comes perilously close to the outer boundaries of
acceptable legal argumentation, but also offends abecedarian rules
of grammar. We reject the suggestion out of hand. See Chadwick-
BaRoss, Inc. v. T. Buck Constr., Inc., 627 A.2d 532, 534 (Me. 1993)
(explaining that a contract need not rule out every conceivable
construction of its terms in order to be unambiguous).
                         We need go no further.                                        It is the proper office of an
appellate court to affirm the entry of summary judgment when the
words of a contract are so clear that "reasonable people could not
differ over their meaning."                                                     Boston Five Cents Sav. Bank v.
Secretary of Dep't of HUD, 768 F.2d 5, 8 (1st Cir. 1985); accord
Singh, 977 F.2d at 21. This is such a case.
Affirmed. Costs to appellees.
                                                                              19