UNITED STATES of America, Appellee,

v.

Robert L. McGILL, Defendant, Appellant.

No. 91–1145.

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1991.

Decided Jan. 3, 1992.

---

Michael L. Altman with whom Mark W. Corner, Helen E. Morgan, and Rubin and Rudman, Boston, Mass., were on brief, for defendant, appellant.

Yoel Tobin, Atty., Tax Div., U.S. Dept. of Justice, with whom Shirley D. Peterson, Asst. Atty. Gen., Robert E. Lindsay and Alan Hechtkopf, Attys., Tax Div., Washington, D.C., and Wayne A. Budd, U.S. Atty., Boston, Mass., were on brief, for the U.S.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant Robert L. McGill was convicted on three counts of willfully evading the payment of income tax owing to the federal government.[1] On appeal, McGill raises claims of error involving both the district court's jury instructions and the court's rulings in respect to the introduction of certain evidence. Finding no cognizable error, we affirm the judgment below.

---

**1.** The statute of conviction provides in pertinent part:

 Any person who willfully attempts in any manner to evade or defeat any tax imposed by [the Internal Revenue Code] or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be [punished as prescribed].

26 U.S.C. § 7201 (1988).

## I. *Jury Instructions*

The appellant attacks the court's charge on two fronts. Our response conforms to his battle plan.

### A.

McGill first claims that the district court erred in failing adequately to instruct the jury that a mistake of law constitutes a complete defense to a charge of willful tax evasion. In addressing this claim, we acknowledge the self-evident: "It is hornbook law that an accused is entitled to an instruction on his theory of defense so long as the theory is a valid one and there is evidence in the record to support it." *United States v. Rodriguez*, 858 F.2d 809, 812 (1st Cir.1988); *see also Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988); *United States v. Victoria–Peguero*, 920 F.2d 77, 86 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991). Nonetheless, a defendant has no right to put words in the judge's mouth. So long as the charge sufficiently conveys the defendant's theory, it need not parrot the exact language that the defendant prefers. *United States v. Nivica*, 887 F.2d 1110, 1124 (1st Cir.1989), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990); *United States v. Cintolo*, 818 F.2d 980, 1004 (1st Cir.), *cert. denied,* 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987); *United States v. Coast of Me. Lobster Co.*, 557 F.2d 905, 909 (1st Cir.), *cert. denied,* 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977).

In this case the government had the burden of showing that the appellant voluntarily and intentionally violated a known legal duty to pay taxes on certain unreported income. *See United States v. Pomponio*, 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976) (per curiam); *United States v. Monteiro*, 871 F.2d 204, 209 (1st Cir.), *cert. denied,* 493 U.S. 833, 110 S.Ct. 108, 107 L.Ed.2d 71 (1989). Because ignorance of the law is a defense in tax evasion cases, *see Cheek v. United States*, — U.S. —, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991), the jury, had it concluded that McGill possessed a good-faith, subjective belief that he did not owe taxes on the income in question, would have been duty bound to acquit. *See id.* 111 S.Ct. at 610–11; *United States v. Aitken*, 755 F.2d 188, 191–92 (1st Cir.1985). Thus, McGill, upon timely request, enjoyed the right to have the jury instructed on this defense.

The appellant fully availed himself of this right, asking the district court to give a specific instruction that he could not "be held criminally liable if in good faith he misunderstood the requirements of [the] law, or in good faith believed that his income was not taxable." While the court declined to give this instruction in *haec verba*, it did tell the jury that the government had to prove the defendant "attempt[ed] to evade income tax willfully, intentionally, not by accident or mistake, knowing that he had a legal duty to report the income in question and to pay a tax on it." Later in the charge, the court reiterated the government's burden of proving that McGill had the "requisite knowledge and understanding that during the tax year involved in a particular count he had income which was taxable and which he was required by law to report."

In determining whether a district court's instructions to the jury adequately conveyed a specific concept, a reviewing court must focus on the charge as a whole. *See United States v. Park*, 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975); *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Nivica*, 887 F.2d at 1125; *United States v. Serino*, 835 F.2d 924, 930 (1st Cir.1987); *Cintolo*, 818 F.2d at 1003; *New England Enterprises, Inc. v. United States*, 400 F.2d 58, 71 (1st Cir.1968), *cert. denied,* 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969). Here, the lower court, though spurning the exact phraseology which the appellant sought, accurately communicated the meat of the defense's theory. The fact that the court's instructions on mistake of law were dispersed throughout the charge neither diminished their force nor robbed them of their inherent vitality. The jury was adequately instructed that, if McGill's

failure to report the income and pay the resultant taxes stemmed from an honest mistake as to the extent of his legal obligations, an acquittal must follow. The concept was stated plainly and unequivocally. No more was exigible.

### B.

■ Appellant urges that the charge was flawed in another respect as well: notwithstanding a timely request, the court did not instruct the jury that "careless disregard, negligence, even gross negligence does not amount to willfulness sufficient to find [the defendant] guilty." The trial court's refusal to give a particular instruction constitutes reversible error only if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case. *See United States v. Gibson*, 726 F.2d 869, 874 (1st Cir.), *cert. denied*, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984).

■ In this instance, the assignment of error is hoist upon the second prong of the test. The court repeatedly cautioned the jury that the government had to prove willfulness anent McGill's underreporting of taxable income. The court also told the jury, quite pointedly, that McGill could not be found guilty if his actions were the result of "an honest mistake with respect to what he had to report." Though the judge never used the precise words favored by the defendant—"careless disregard," "negligence," "gross negligence"—the alternate language that he employed covered substantially the same ground. *See Pomponio*, 429 U.S. at 12–13, 97 S.Ct. at 24 (willfulness "means a voluntary, intentional violation of a known legal duty"). When, as here, the trial court's instructions ade-

quately communicated the relevant law to the jury, the fact that some other judge might have phrased a particular point better, or more elegantly, is an irrelevancy. *See, e.g., Monteiro*, 871 F.2d at 209 (willfulness instruction in tax cases does not have to follow any particular formulation). Because the substance of appellant's requested instruction was substantially covered in the court's instructions, there was no error. *See United States v. Passos–Paternina*, 918 F.2d 979, 984 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1637, 2808, 113 L.Ed.2d 732 (1991); *United States v. Noone*, 913 F.2d 20, 30 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991).

## II. *Admission of Certain Evidence*

■ Appellant's remaining claim of error involves the admission of a number of deposit tickets under the business records exception to the hearsay rule.[2] McGill does not contest the admission of the documents per se; instead, he argues that certain taxpayer identification numbers which were transcribed onto the tickets when they were removed from their mailing envelopes should have been redacted. We approach this claim mindful that the usual array of threshold questions pertaining to the admissibility of business records come within the ambit of the district court's discretion. These usual questions include, of course, questions as to whether a proper foundation was laid or whether sufficient indicia of trustworthiness were shown. *See, e.g., United States v. Arboleda*, 929 F.2d 858, 869 (1st Cir.1991); *United States v. Ladd*, 885 F.2d 954, 956 (1st Cir.1989); *United States v. Patterson*, 644 F.2d 890, 900–01 (1st Cir.1981).

### A.

In the case at hand, the prosecution's theory was that the defendant failed to

---

**2.** The exception excludes from the operation of the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that

business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed.R.Evid. 803(6).

report, and thereafter pay tax upon, interest income earned on certain United States Treasury notes (T-notes) purchased through the Bank of New England (BNE). The evidence showed that, in order to deposit these sums, the noteholder would clip the interest coupon from the T-note, fill out a deposit slip, put the coupon for the relevant period and a deposit slip into a standard coupon deposit envelope provided by BNE, and transmit the envelope to the bank. An instruction printed on the envelope directed the depositor to write his taxpayer identification number on the back of the envelope.[3] When the envelope was received at BNE, a bank employee would transpose the identification number from the deposit envelope to the deposit ticket at the same time as he/she credited the funds to the designated account. The identification number was thereafter used by the bank to report taxable interest income to the Internal Revenue Service. The deposit envelopes themselves were discarded.

The evidence further showed that there were ten deposits of T-note interest into the defendant's checking account during the period at issue. All the deposit tickets bore defendant's name and bank account number. Three of these bore the taxpayer identification number of defendant's father, who had died in 1980; three bore no identification number; and the remaining four bore the defendant's identification number.[4] There was no direct evidence as to who completed which deposit tickets, although the defendant admitted that he sometimes filled out such tickets. He also testified, however, that his wife sometimes performed this task. The defendant claimed that he could not recall marking the deposit envelopes. And, he proclaimed himself unable to imagine how his father's taxpayer identification number came to appear on certain deposit tickets.

The defendant did not report as taxable income any of the interest income deposited by means of deposit tickets bearing either his father's taxpayer identification number or no number at all.

## B.

The defendant argues that the trial court abused its discretion in allowing the deposit tickets into evidence without first excising the taxpayer identification numbers appearing thereon. We disagree. While defense counsel labors valiantly to style each number as a hearsay statement coming from McGill (i.e., "this is the identification number that McGill requested the Bank to use for income tax purposes"), it is clear that in each instance the challenged statement is coming from a bank employee performing his or her routine duties (i.e., "this is the identification number that appeared on the deposit envelope"). In other words, by transcribing the taxpayer identification number from the mailing envelope onto the deposit ticket, a bank employee, rather than the defendant, is making the challenged assertion. It follows inexorably that, because the assertion originated with a bank employee acting in the ordinary course of the bank's business, the testimony before the district court constituted a proper foundation for the admission of the unredacted deposit tickets as business records under Evidence Rule 803(6).

This foundation is constructed principally out of the testimony of Nelson Soto, the assistant supervisor of the bank's coupon collection department during the time frame in question. Soto described in considerable detail BNE's regular procedure for processing coupon deposit tickets. His testimony laid a solid foundation for the evidence and sufficiently established its trustworthiness. *See Patterson*, 644 F.2d at 901; 4 J. Weinstein, *Weinstein's Evidence*, ¶ 803(6)[02]; *see also Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1061 (1st Cir.1985) (qualified witness need only be person who can explain how record was kept, not nec-

---

3. In the case of an individual taxpayer, the taxpayer identification number would be the individual's social security number. 26 C.F.R. § 301.6109–1(a) (1991).

4. A fifth deposit ticket bearing defendant's identification number reflected the deposit of T-note principal, which McGill was not required to report.

essarily the person who actually prepared the record).

Appellant's attempt to impugn the trustworthiness of the bank's procedures by pointing to the lack of a taxpayer identification number on three of the tickets is unsuccessful. The mere fact that errors or deviations have occurred from time to time does not destroy the inference of underlying trustworthiness which a judge may choose to draw from proof of a general practice. *See Patterson,* 644 F.2d at 901 ("The fact that a regular practice is occasionally broken is not enough to avoid application of the business records rule; otherwise, the rule would be swallowed up by an exception for less-than-perfect business practices."); *see also Kassel v. Gannett Co.,* 875 F.2d 935, 944–45 (1st Cir.1989); *United States v. Hathaway,* 798 F.2d 902, 907 (6th Cir.1986); *United States v. Keplinger,* 776 F.2d 678, 694–95 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). Whether the numbers were missing because McGill failed to inscribe them on the mailing envelopes or because the bank failed to transcribe them was not critical to the finding of trustworthiness.

Appellant's reliance on *United States v. Berkowitz,* 429 F.2d 921 (1st Cir.1970), is similarly misplaced. Passing the fact that *Berkowitz* was decided prior to the enactment of the Federal Rules of Evidence, thus limiting its precedential force, there is a more fundamental flaw in appellant's argument. *Berkowitz* involved a hearsay statement regarding the value of goods which was put forth for the truth of the stated value by a witness who had no firsthand knowledge of the actual value. *Id.* at 927. In the case at bar, however, the critical statement, properly visualized, involved the numbers recorded on a series of mailing envelopes—a matter as to which the bank employee who received the envelopes clearly possessed firsthand knowledge.

We need go no further. Because the bank's procedures for processing coupon deposit tickets and envelopes possessed sufficient indicia of trustworthiness and were adequately explained to the court by a sufficiently knowledgeable witness, we find no abuse of discretion in the admission of the unredacted deposit tickets into evidence under the aegis of Evidence Rule 803(6).

Affirmed.