# United States Court of Appeals
## For the First Circuit

Nos. 10-2160, 10-2161

UNITED STATES OF AMERICA,

Appellee,

v.

FREDERICK ALLEN and KIMBERLEE ALLEN,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Boudin, Selya and Howard,
Circuit Judges.

Lowell H. Becraft, Jr. for appellants.
Joseph B. Syverson, Tax Division, Department of Justice, with whom Carmen M. Ortiz, United States Attorney, Frank P. Cihlar, Chief, Criminal Appeals & Tax Enforcement Policy Section, and Gregory Victor Davis, Tax Division, Department of Justice, were on brief for appellee.

January 6, 2012

**BOUDIN, Circuit Judge**. Frederick and Kimberlee Allen-- husband and wife--appeal from their convictions for tax-related offenses. For some years the Allens filed annual federal income tax returns reporting their income. However, for tax years 1997 through 1999, despite reportable income, the Allens filed returns reporting zero income. On the advice of their dentist, and their own research, they concluded that no provision of the Internal Revenue Code imposed "liability" on them for taxes, and attached this explanation to their returns.

Beginning in 1998, the Allens succeeded in stopping their mutual employer from withholding income taxes from their wages by claiming exemptions from withholding. Later, in 2000, the Allens convinced their employer to issue them paychecks directly instead of through a payroll company, and to treat them as "independent contractors" not subject to withholding of social security and medicare taxes. In 2001, Frederick Allen managed to secure the return of earlier-paid employment taxes withheld from the Allens' wages before their claim of "independent contractor" designation.

Between 2000 and 2008, despite reportable income asserted by the government to exceed $100,000 in each of the years, the Allens filed no tax returns at all. During the same period, they took a variety of steps that made it more difficult for the government to track and levy their assets, such as requesting that their paychecks be made payable to "cash" or payable directly to

-2-

the Allens' creditors, closing all of their bank accounts, and transferring ownership of their home to a trust. The Allens paid all of their bills using cash and money orders, and cashed any checks through a stratagem with a bank teller friend.

Between 1999 and 2007, the Internal Revenue Service ("IRS") repeatedly informed the Allens that their "no liability" position was frivolous, and in 2007, the IRS specifically warned of criminal sanctions. In 2009, the government charged the Allens each with one count of conspiracy to defraud the United States, 18 U.S.C. § 371 (2006); one count of attempted evasion of payment of tax (for tax year 1999), 26 U.S.C. § 7201; and four counts of willful failure to file income tax returns (for tax years 2003-2006), id. § 7203.

The Allens were tried together by a jury in April 2010. The government offered evidence as to the taxes owed in the years at issue and evidence as to the warnings given to the Allens, the zero returns filed in several years and the absence of returns in the others, and various steps summarized above taken by the Allens to frustrate tax collection. A detailed recitation is unnecessary because the Allens do not claim that the evidence taken as a whole was insufficient to support the verdicts.

The Allens' main defense at trial, where both testified, was that they had a good faith belief that--as they understood the tax laws--they owed no taxes. Cheek v. United States, 498 U.S. 192

(1991).[1]  Frederick Allen testified that his research, prompted by discussion with his dentist, persuaded him that taxpayers like him and his wife were not specifically identified in the Internal Revenue Code as liable for taxes.  His searches included accessing various websites purporting to analyze the tax laws, including that of an organization called the We The People Foundation, which he later joined.

Frederick Allen testified that some of the literature he relied on was prepared by a man named Larken Rose, with whom Allen ultimately worked on a "letter writing campaign . . . trying to get answers from various people in the government."  The prosecutor's opening question in cross-examining Allen was: "Are you telling this jury that you firmly hold these beliefs even after your good friend Larken Rose went to jail for 15 fifteen [sic] months for not filing tax returns for these same and similar beliefs?"--to which Allen responded, "Absolutely."

Robert Schulz, who headed the We The People Foundation that the Allens joined and from which Frederick Allen received information, appeared as a defense witness.  Schulz testified that his foundation did espouse the no-liability positions on which the

---

[1]Cheek concluded that a defendant lacks the willfulness necessary for tax evasion if he honestly believes, based on a misreading of the tax laws, that he owes no taxes--the claim made by both defendants in this case.  Id. at 201-02.  Cheek distinguished, and did not allow as a defense, a belief that the tax laws are unfair or are unconstitutional.  Id. at 202 n.8, 204-07.

Allens relied and that he believed those views to be correct.  On cross-examination by the prosecutor, Schulz conceded that he had testified on behalf of another defendant charged with tax crimes, Richard Simkanin, who was ultimately convicted.

The jury convicted the Allens on all counts in April 2010, and the court sentenced each defendant to identical terms of 36 months' imprisonment.  On appeal, the Allens argue only that the district court erred in refusing to give four requested jury instructions (all reprinted along with other disputed charges in an addendum to this decision).  They also suggest that the prosecutor exceeded the proper bounds of cross-examination, although no objection was lodged at trial nor is one seriously developed on appeal.

Review as to instructions is ordinarily de novo as to questions of substantive law, while issues of phrasing and emphasis are reviewed for abuse of discretion.  United States v. Teemer, 394 F.3d 59, 63 n.2 (1st Cir.), cert. denied, 544 U.S. 1009 (2005). Refusal to give a particular instruction requires reversal only where the requested instruction was both substantively correct and not substantially covered elsewhere in the charge--and even then only when the error was not harmless.  United States v. Gonzalez, 570 F.3d 16, 21 (1st Cir. 2009).

The first failure to instruct claim is that the district court erred in rejecting a tendered instruction concerning "guilt

-5-

by association."  Although the instructions given said that guilt must be based on the Allens' own intentions and actions, what the Allens requested was considerably more pointed: their proposed charge warned against "guilt by association" and against attributing guilt merely because the defendant was "associated with or friendly with anyone you may find to have acted in violation of the law."

The Allens justify this charge as a response to the cross-examination already described.  Although the Allens also suggest in their summary of argument that the questions were impermissible, they neither objected to them at trial nor seriously develop this contention on appeal.  Nevertheless, it is helpful to make clear that the case law, selectively cited by the Allens, does not automatically restrict references to convictions of third parties: it all depends on the relevance of the references and the risk of any threatened unfair prejudice.

Here, the questions were relevant.  When a defendant urges good faith in failing to pay taxes, what he understood to be his obligations matters.  It was at least relevant to Frederick Allen's good faith not only that Allen had been repeatedly warned by the IRS but also that he knew that the views advocated by Larken Rose, similar to Allen's own, had lead to Rose's own conviction for not filing tax returns.  He might nevertheless honestly entertain contrary views but that he had information contradicting his

professed beliefs was still worth considering.  See Cheek, 498 U.S. at 202.

As to Schulz, the cross-examination brought out that he had similarly testified as to tax obligations on behalf of another defendant charged with tax crimes who was ultimately convicted; indirectly, Schulz' testimony (to which the government had objected) could be regarded as supporting by example the reasonableness of the Allens' beliefs.  So, the jury might consider, as impairing Schulz' own credibility as a professed believer, knowledge that his position had already been rejected by a federal court.  It is, as with Allen, fairly modest impeachment but still relevant.

The Allens could have objected that the cross-examination --both of Frederick Allen and of Schulz--was substantially more prejudicial than helpful, Fed. R. Evid. 403; but, that judgment is primarily for the trial judge, and there was certainly no plain error.  Showing that a tax protester does not believe what he says is a tricky task that requires that some latitude be allowed to the government.

As for the requested cautionary instruction, there is often some risk of prejudice in averting to convictions of others for the crime in question.[2]  The threat of guilt by association is

_____

[2]One risk is the general concern that the jury will rely on "birds of a feather are flocked together" reasoning to conclude that the defendant is more likely to have committed a criminal act

perhaps greatest where the defendant has done little but is closely associated with others already known to have been convicted or, more often, who are co-defendants or alleged co-conspirators whose patent wrongdoing is brought out in detail in the trial.

Here, the Allens' own conduct and the basis for their beliefs were the centerpiece of the trial, and the reference to the convictions of Rose and Simkanin was brief and undeveloped. Little risk existed that the latter would overwhelm, confuse or seriously taint the jury's understanding of the former. The instruction could reasonably have been given but, in matters like this not everything permissible is therefore compulsory: given the minimal risk of such prejudice in this case, refusing the instruction was not an abuse of discretion.

The other three instructions in dispute present less of a legal issue because, in our view, two were given in substance and the last requested instruction was a slanted statement of the law. The first of the two, labeled "conspiratorial intent," sought to make clear that the prosecution must prove two intents on the conspiracy charge: an intent to agree to participate in the

if he is associated with other criminals. E.g., United States v. Rivera-Santiago, 872 F.2d 1073, 1083-84 (1st Cir.), cert. denied, 492 U.S. 910, and cert. denied, 493 U.S. 832 (1989). The other--probably more relevant here--is that the jury could treat a conviction of another for similar conduct as a guide to what it should do in the case at hand. E.g., United States v. Ofray-Campos, 534 F.3d 1, 22-23 (1st Cir.), cert. denied, 129 S. Ct. 588 (2008), and cert. denied, 129 S. Ct. 999 (2009).

conspiracy and an intent to commit the underlying substantive offense--here defrauding the United States.

While accurate, e.g., United States v. Frankhauser, 80 F.3d 641, 653 (1st Cir. 1996), that statement of law was adequately conveyed to the jury by the court's instruction that the prosecution was required to prove "that the defendant whose case you are considering willfully joined in th[e] agreement" and that "[t]o act 'willfully' . . . means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed."

In turn the instructions clearly defined the underlying crime as "defraud[ing] the United States, or one of its agencies or departments, by dishonest means," and went on to define the term "defraud" in conventional phrasing that is not here contested. While the jury had to connect the two instructions, the central scienter issue--whether the Allens acted in good faith or instead knew they were acting contrary to law--was the heart of the evidence, the arguments and the instructions.

Indeed, the trial court instructed the jury:

> Now, let me talk about the subject of good faith. . . . The defendant does not act willfully if he or she believes in good faith that he or she is acting within the law, or that his or her actions comply with the law. A good faith belief is one which is honestly and genuinely held. Therefore, if the defendant you are considering subjectively believed that what he or she was doing was in compliance with the tax statutes, he or she

-9-

> cannot be said to have had the criminal intent required to engage in tax evasion or to fail to file federal income returns. . . .
>
> In proving willfulness, it is the government's burden to prove beyond a reasonable doubt that the defendant did not act with a good faith belief as to what the law required of him. If you find the defendant believed in good faith he or she was acting in compliance with the law as to any count, you must find him or her not guilty as to that count.

This instruction also demonstrates the flaw in the Allens' third claim, namely, that the judge refused their request to provide their "theory of defense" instruction. That instruction was a lengthy and repetitive five-paragraph charge that essentially stated separately, for each non-conspiracy count, that the jury must acquit if it had a reasonable doubt about the defendant's guilt given the defendant's profession of a good faith belief that his or her income was not taxable.

The Allens say that they were disadvantaged because the district court did not use the phrase "theory of defense" in presenting the substantively correct good faith charge to the jury. It is quite true that in some situations a court ought to focus the jury's attention on just what the defendant disputes--whether it is an affirmative defense or merely a specification of just what element of the government's case is controverted and in a nutshell just what the defendant's version of the matter might be. But this

-10-

is mandatory only where there is some risk that the theory of the defense might otherwise seem obscure.

In this case, the Allens did not deny that they had failed to report income or failed to file taxes at all, nor was there any real dispute about what they had been told by the IRS or about the steps they had taken to escape withholding or conceal their own transactions. The only serious dispute was about their assertion of good faith and professed belief that no taxes were due on their income and therefore it was not reportable. That this was their "theory of defense" hardly needed any reinforcement by the judge, let alone a separate restatement addressed to each of the counts dealing with different years.

Finally, the Allens attack the district court's refusal to give their requested charge stating: "In this case, the defendant is not presumed to know the law. For any law the government asserts the defendant knew, the government must prove beyond a reasonable doubt that the defendant knew it." The first sentence is more or less right but was covered in substance and more cogently by the district judge's charge; the second sentence is misleading and was properly refused.

Many are familiar with the saying that "a defendant is presumed to know the law," which is rarely intended as a factual presumption. Rather, it is ordinarily used as a shorthand for the "general rule that ignorance of the law or a mistake of law is no

defense to criminal prosecution[, a proposition that] is deeply rooted in the American legal system." Cheek, 498 U.S. at 199. This is fair enough for conduct that is widely understood to be wrong, whether or not illegal, as is true of most familiar criminal violations.

However, for crimes that depend on legal rules that are by no means widely understood, Congress has in a number of cases imposed a requirement, usually phrased as a requirement of "willfulness," that requires as an element of the offense knowledge by the defendant that the conduct is illegal or at least wrongful. In this case, for slightly different reasons, all three of the offenses charged required knowledge on the part of the defendants that they did indeed owe taxes that they were required to declare and to pay.[3]

But this was fully explained to the jury in the two good faith paragraphs quoted above. This explanation was stated in the affirmative and, in using the good faith and belief language, was far more useful than entering into a discussion about presumptions. Apart from the familiar "presumed innocent" phrase--usually matched with an explanation that the government carries the burden of

---

[3]The conspiracy to defraud count requires wrongful intent, Frankhauser, 80 F.3d at 653, as was explained to the jury by the instructions in this case; the tax evasion counts and the failure to file counts name crimes that explicitly require willfulness. 26 U.S.C. §§ 7201, 7203.

proof--presumptions usually require some care in explanation. Their use is sometimes necessary but certainly not here.

The second sentence in the requested instruction--"For any law the government asserts the defendant knew, the government must prove beyond a reasonable doubt that the defendant knew it"-- is misleading and was properly refused.  It implies that the government's burden was to prove that the defendants knew of the particular statutes and regulations obligating them to pay income taxes and file returns.  But "[k]nowledge of the law's demands does not depend on knowing the citation any more than ability to watch a program on TV depends on knowing the frequency on which the signal is broadcast.[4]"

In this case, the Allens claimed that, in general, ordinary wage earners were not subject to tax on their income because the Internal Revenue Code did not say they were liable. Improbable though their profession of belief may seem, the jury was instructed up, down and sideways that they were entitled to be acquitted if they held this belief in good faith.  The jury did not

_____

[4]United States v. Patridge, 507 F.3d 1092, 1094 (7th Cir. 2007) (Easterbrook, J.), cert. denied, 552 U.S. 1280 (2008), and cert. denied, 555 U.S. 909 (2008); see also United States v. Cavins, 543 F.3d 456, 458-59 (8th Cir. 2008).  Nor did the Supreme Court suggest otherwise in Bryan v. United States, 524 U.S. 184, 194-95 (1998).  Rather, it is "aware[ness] of the duty at issue" that is required in tax prosecutions like the Allens'.  Id. at 195 n.22.

-13-

credit them on what is an issue of fact, namely, the sincerity of their professed beliefs.

  <u>Affirmed</u>.

ADDENDUM

The Allens' requested "Guilt by Association" instruction[5]:

> There is a long-standing rule against "guilt by association." A defendant may not be convicted merely because people who worked or associated with him or her committed criminal conduct. In this case, a defendant cannot be convicted simply because he or she was associated with or friendly with anyone you may find to have acted in violation of the law. Each element of each offense must be proved independently against a defendant individually on the basis of his or her own conduct and state of mind.

The Allens' requested "Conspiratorial Intent" instruction:

> In this case, the government must prove two different types of intent beyond a reasonable doubt before a defendant can be considered part of a conspiracy to defraud the United states. It must prove both an intent to agree to participate in a conspiracy to defraud the United States, and an intent to defraud the United States.
>
> Furthermore, I instruct you that a person cannot have the specific intent to defraud the United States unless he knows he has a federal tax liability.
>
> If the government has not proven that a defendant both intended to defraud the United States and intended to agree with another person to defraud the United States, you must acquit that defendant.

The Allens' requested "Not Know Law" instruction:

> In this case, the defendant is not presumed to know the law. For any law the government asserts the defendant knew, the

_____

[5]Supporting citations that were included in the Allens' submission to the district court have been omitted.

-15-

government must prove beyond a reasonable doubt that the defendant knew it.

The Allens' requested "Theory of Defense" instruction:

If upon consideration of all the evidence you are left with a reasonable doubt whether a defendant believed in good faith that for the year 1999 his or her income was not taxable, it shall be your duty to acquit him or her for count 2 of the indictment.

If upon consideration of all the evidence you are left with a reasonable doubt whether a defendant believed in good faith that for the year 2003 his or her income was not taxable, it shall be your duty to acquit him or her for count 3 of the indictment.

If upon consideration of all the evidence you are left with a reasonable doubt whether a defendant believed in good faith that for the year 2004 his or her income was not taxable, it shall be your duty to acquit him or her for count 4 of the indictment.

If upon consideration of all the evidence you are left with a reasonable doubt whether a defendant believed in good faith that for the year 2005 his or her income was not taxable, it shall be your duty to acquit him or her for count 5 of the indictment.

If upon consideration of all the evidence you are left with a reasonable doubt whether a defendant believed in good faith that for the year 2006 his or her income was not taxable, it shall be your duty to acquit him or her for count 6 of the indictment.

Excerpts from jury instructions given to jury:

The burden is always on the prosecution to prove guilt beyond a reasonable doubt as to every essential element of the crime charged. And this burden never shifts to a defendant because the law never imposed on the defendant in a

-16-

criminal case the burden or duty of calling any witnesses or producing any evidence.

. . . .

For you to find the defendants guilty of the conspiracy charged, you must be convinced that the government has proved each of the following things beyond a reasonable doubt . . . .

First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to defraud the United States, or one of its agencies or departments, by dishonest means. The word "defraud" is not limited to its ordinary meaning of cheating the government out of money or property. "Defraud" also means impairing, obstructing or defeating the lawful functions of any government agency or department by dishonest means.

Second, that the defendant whose case you are considering willfully joined in that agreement.

. . . .

To act "willfully" in the context of the conspiracy charge means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed . . . .

Proof that the defendant willfully joined in the agreement must be based upon evidence of his or her own words and/or actions.

. . . .

To act willfully means to intentionally violate a known legal duty to file, not to act as a result of accident, mistake, or negligence.

Now, let me talk about the subject of good faith. . . . The defendant does not act willfully if he or she believes in good faith that he or she is acting within the law, or that his or her actions comply with the law. A good faith belief is one which is honestly and genuinely held. Therefore, if the defendant you are considering subjectively believed that what he or she was doing was in compliance with the tax statutes, he or she cannot be said to have had the criminal intent required to engage in tax evasion or to fail to file federal income returns. But if the defendant disagrees with the tax law or believes the tax laws violate his or her constitutional rights, such beliefs are not a good faith misunderstanding of the law.

In proving willfulness, it is the government's burden to prove beyond a reasonable doubt that the defendant did not act with a good faith belief as to what the law required of him. If you find the defendant believed in good faith he or she was acting in compliance with the law as to any count, you must find him or her not guilty as to that count.

A belief need not be objectively reasonable to be held in good faith. Nevertheless, you may consider whether the defendant's stated belief about the tax statutes was reasonable as a factor in deciding whether the belief was honestly or genuinely held. In considering the defendant's good faith misunderstanding of the law, you must make your decision based on what the defendant believed in his own mind and not upon what you or someone else believes or thinks the defendant ought to have believed. Whether the defendant's beliefs about the legality of his actions were right or wrong, reasonable or unreasonable, is irrelevant to the issue of willfulness. The only issue is whether those beliefs were, in fact, held by the defendant whose case you are considering.