# United States Court of Appeals
## For the First Circuit

No. 12-2276

UNITED STATES OF AMERICA,

Appellee,

v.

CHARLES ADAMS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Howard, Selya and Stahl,

Circuit Judges.

Beverly B. Chorbajian for appellant.
Damon William Taaffe, Attorney, Tax Division, U.S. Dep't of Justice, with whom Kathryn Keneally, Assistant Attorney General, Frank P. Cihlar, Chief, Criminal Appeals & Tax Enforcement Policy Section, Gregory Victor Davis, Attorney, Tax Division, and Carmen M. Ortiz, United States Attorney, were on brief, for appellee.

January 13, 2014

**SELYA, Circuit Judge.** Defendant-appellant Charles Adams, an unabashed opponent of the tax laws, advances two discrete claims of error regarding his convictions on charges of conspiracy and tax evasion. One claim, which raises a question of first impression at the federal appellate level, implicates the lawfulness of a premises search conducted by armed agents of the Internal Revenue Service (IRS). The other claim challenges the district court's jury instructions. After careful consideration, we reject his claims and affirm the judgment below.

This appeal arises out of the same indictment and trial discussed in United States v. Floyd, ___ F.3d ___ (1st Cir. 2014) [Nos. 12-2229, 12-2231], and we assume the reader's familiarity with that opinion. Against this backdrop, we offer only a sketch of the relevant proceedings.

The defendant, along with several other persons, was indicted in 2009. The charges with which we are concerned include one count of conspiracy to defraud the United States by obstructing the collection of payroll taxes and two counts of tax evasion.[1] See 18 U.S.C. § 371; 26 U.S.C. § 7201. During the pretrial proceedings, the defendant moved unsuccessfully to suppress evidence obtained in a search of his home.

---

[1] A third tax evasion count was dismissed at trial and need not concern us.

Before the jury, the defendant's principal defense centered on his claim of a subjective good-faith belief that he was not liable for any of the taxes implicated in his case. See Cheek v. United States, 498 U.S. 192, 203 (1991). The jury rejected that defense and found the defendant guilty on all three counts. The district court imposed a 48-month term of immurement. This timely appeal followed.

In this venue, the defendant assigns error to the district court's denial of his motion to suppress and to its handling of his good-faith defense. We address these assignments of error sequentially.

We start with an explication of the material needed to place the suppression issue into perspective. On March 19, 2004, a magistrate judge issued a warrant that authorized the search of the defendant's home in Wrentham, Massachusetts. Four days later, armed IRS agents executed the warrant and seized evidence that the government later used against the defendant.

During pretrial skirmishing, the defendant moved to suppress this evidence. Pertinently, he asserted that the search was unlawful because the manner of its execution was not authorized by statute. The defendant based this assertion on 26 U.S.C. § 7608, which deals with the "[a]uthority of internal revenue enforcement officers."

The defendant's argument takes the following shape. Subsection (a) of the statute, which deals with IRS enforcement of laws pertaining to alcohol, tobacco, and firearms, explicitly allows agents enforcing those laws to carry guns. See 26 U.S.C. § 7608(a)(1). Subsection (b), which deals with IRS enforcement of other tax laws, contains no similar grant of explicit permission to carry guns. The defendant posits that the absence of any such explicit permission in subsection (b) indicates Congress's intent to prohibit IRS agents enforcing those laws from carrying firearms. See United States v. Hernández-Ferrer, 599 F.3d 63, 67-68 (1st Cir. 2010) (discussing principle of expressio unius est exclusio alterius). And because the agents who searched his home were armed and not investigating any offense involving alcohol, tobacco, or firearms, the defendant argues that the search was unlawful and the evidence seized should therefore be suppressed.

The defendant's theory is a novel one, and the district court was skeptical of it. In the end, the court elected to detour around the statutory construction question. Instead, the court assumed a statutory violation but held that suppression was not an appropriate remedy. This prudential approach makes eminently good sense: as we recently wrote, "[d]iscretion is often the better part of valor, and courts should not rush to decide unsettled legal issues that can easily be avoided." United States v. Gonzalez, 736 F.3d 40, 40 (1st Cir. 2013). Thus, we too assume without deciding

-4-

that the agents who executed the search of the defendant's home violated 26 U.S.C. § 7608 because they were armed.

Suppression of evidence is strong medicine, not to be dispensed casually. The question of whether exclusion of evidence is an available remedy for a particular violation is a question of law and, therefore, is subject to de novo review. See United States v. Garcia-Hernandez, 659 F.3d 108, 111 (1st Cir. 2011); United States v. Leahey, 434 F.2d 7, 10 (1st Cir. 1970). In conducting this inquiry, we remain mindful that "[t]he exclusionary rule was not fashioned to vindicate a broad, general right to be free of agency action not 'authorized' by law, but rather to protect certain specific, constitutionally protected rights of individuals." United States v. Hensel, 699 F.2d 18, 29 (1st Cir. 1983); accord United States v. Henry, 482 F.3d 27, 32 (1st Cir. 2007). The cases in which the Supreme Court has approved a suppression remedy for statutory violations are hen's-teeth rare, and "[i]n those cases, the excluded evidence arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests." Sanchez-Llamas v. Oregon, 548 U.S. 331, 348 (2006). We conclude, therefore, that statutory violations, untethered to the abridgment of constitutional rights, are not sufficiently egregious to justify suppression.[2] See United States

---

[2] There is an exception to this principle for instances in which the statute itself mandates suppression as a remedy. See, e.g., United States v. Abdi, 463 F.3d 547, 556 (6th Cir. 2006).

v. <u>Thompson</u>, 936 F.2d 1249, 1251 (11th Cir. 1991) (collecting cases).

The defendant resists this conclusion. He contends that the performance of the search by armed agents constituted an unreasonable intrusion into his dwelling. This contention lacks force.

Whatever intrusion may have occurred was not of constitutional dimension. While the defendant assuredly had a constitutionally protected privacy interest in his home, <u>see</u>, <u>e.g.</u>, <u>Georgia</u> v. <u>Randolph</u>, 547 U.S. 103, 115 (2006); <u>Payton</u> v. <u>New York</u>, 445 U.S. 573, 585-86 (1980), that interest is protected in the first instance by the warrant requirement of the Fourth Amendment — a requirement that was fully satisfied in this case. The defendant has not challenged the validity of the warrant, and the warrant authorized the agents to enter the home and conduct the search.

We add, moreover, that the fact that the agents were armed had no impact either on the scope of the search or on the extent of the evidence collected. Indeed, the record here does not show the slightest connection between the alleged statutory violation and the avails of the search. So viewed, the supposed violation was not a but-for cause of procuring the evidence. The Constitution was not implicated and suppression was, therefore,

The statute at issue here contains no such mandate.

-6-

unwarranted. See Hudson v. Michigan, 547 U.S. 586, 592 (2006); United States v. Thomas, 736 F.3d 54, 59 (1st Cir. 2013).

The defendant seeks to reboot his argument in two ways. Both maneuvers are futile.

To begin, the defendant draws an analogy between a violation of section 7608 and a violation of the knock-and-announce rule. The knock-and-announce rule generally requires law enforcement officers "acting under a warrant . . . to announce their presence and purpose, including by knocking, before attempting forcible entry." United States v. Sargent, 319 F.3d 4, 8 (1st Cir. 2003). However, the Supreme Court has held that because a violation of the knock-and-announce rule has "nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." Hudson, 547 U.S. at 594. Seen in this light, the analogy does nothing to aid the defendant's cause.

The defendant's second maneuver — his reliance on our decision in United States v. Leahey — is equally unavailing. There, agents violated a publicly announced IRS procedure by eliciting evidence from the defendant without warning her that they were conducting an investigation into possible criminal tax fraud. See Leahey, 434 F.2d at 11. We determined that the IRS had promulgated the procedure for the purpose of promoting uniform conduct among its agents and protecting taxpayers' rights in the wake of the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436

-7-

(1966). See Leahey, 434 F.2d at 8, 10. Because the agency had purposefully announced the procedure to the public, it could be reasonably expected that taxpayers would rely on the agents' compliance with the procedure in their dealings with the IRS. The agents' failure to comply thus implicated the defendant's due process rights. See id. at 10-11. We emphasize, moreover, that there was a strong connection between the violation of the procedure and the gathering of the disputed evidence. Consequently, suppression of the evidence was an appropriate anodyne. See id. at 11. The situation at hand is at a considerable remove from the situation in Leahey. Here, there is no inkling that the statute was enacted to protect taxpayers' constitutional rights;[3] and in addition, the defendant's constitutional rights were in no way offended by the manner in which the search warrant was executed. For these reasons, Leahey is inapposite.

To say more about this claim of error would serve no useful purpose. We conclude, without serious question, that the

---

[3] Representative Mills, one of the floor managers of the bill, described the amendment that was codified as section 7608(b) as "entirely a procedural or administrative amendment. It would extend to criminal investigators of the Intelligence and Internal Security Divisions of the [IRS] the same authority under present law for Alcohol and Tobacco Tax Division employees relating to the power to execute and serve search and arrest warrants." 108 Cong. Rec. 23,367 (1962).

district court did not blunder in refusing to grant the defendant's motion to suppress.

This brings us to the defendant's complaint about the jury instructions. As said, the defendant's principal defense posited that his subjective good-faith belief that he was not liable for taxes absolved him of the intent required to convict. In support, he testified at trial about his thinking (including his belief that "citizens, living and working in the 50 states, are not liable for [taxes] on . . . compensation for [their] labor").

Periodically — and usually in response to the government's objections — the district court interjected to tell the jury that the defendant's statements were not to be taken as correct statements of law but, rather, were only to be taken as evidence of the defendant's beliefs. These admonitions complemented instructions that the court had given earlier in the trial.

In its end-of-case charge, the court instructed the jurors that a good-faith belief in the inapplicability of the tax laws was a complete defense to the charges lodged against the defendant. The jury nonetheless found the defendant guilty.

On appeal, the defendant argues that the district court's failure to give the more expansive good-faith instructions that he had requested, combined with the periodic instructions given during the trial, undermined his theory of defense. Our review of

preserved jury instructions depends on the nature of the error asserted. Generally speaking, we review a district court's construction of law de novo and its choice of language and emphasis for abuse of discretion. See United States v. Sasso, 695 F.3d 25, 29 (1st Cir. 2012). Of course, "[e]ven an incorrect instruction to which an objection has been preserved will not require us to set aside a verdict if the error is harmless." Id. Thus, a district court's "refusal to give a particular instruction constitutes reversible error only if the requested instruction was (1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case." United States v. McGill, 953 F.2d 10, 13 (1st Cir. 1992).

In this instance, there is a substantial question as to whether the defendant preserved his objections to the district court's actions. But the government has not pressed this point and, in the end, the defendant's objections fail even if we assume, for argument's sake, that they are preserved. Accordingly, we bypass the question of procedural default and proceed directly to the merits of the claim.

The main bearing wall of this claim of error is what the district court did not do: the defendant laments that the court did not give in haec verba the specific instructions that he requested.

These proffered instructions included repeated elaborations of the good-faith defense.

This claim of error crumples when we shift the lens of our inquiry to what the district court actually did. We have never required district courts to embellish good-faith instructions with an array of bells and whistles. To the contrary, we have on several occasions approved simple and straightforward statements of the underlying legal principle. See, e.g., United States v. Allen, 670 F.3d 12, 17-18 (1st Cir. 2012); United States v. Anthony, 545 F.3d 60, 66 (1st Cir. 2008); McGill, 953 F.2d at 12-13. Here, the court gave an accurate instruction on good faith and its relation to intent before launching into the specifics of each count charged. Critically, as part of a lengthy instruction on intent, the court told the jurors that the "defendant's intent must be determined by a subjective standard . . . . A good-faith but mistaken belief as to what the tax laws require is not enough to have the required knowledge and intent." The court reminded the jurors of this general instruction on intent as it limned the specific elements of each count.[4]

_____

[4] In his reply brief, the defendant adds a refinement: he argues specifically that "it was reversible error not to instruct the jury that the [defendant's] beliefs need not be reasonable if they are actually held in good faith." The district court covered this point in substance. Among other things, the court instructed the jurors that they "must decide what a particular defendant actually knew and believed, not what a reasonable person in his position should have known or believed"; and that "[a] good-faith belief is one that is honestly held." No more was exigible. See,

To be sure, the defendant obviously would have preferred to have the court parrot his own language. But the defendant was not entitled to put his words into the judge's mouth. Here, as in McGill, 953 F.2d at 12, the court "spurn[ed] the exact phraseology which the appellant sought," but it "accurately communicated the meat of the defense's theory" to the jury. Because the defendant's proffered instructions were "substantially incorporated into the charge as rendered," they do not support his claim of error. Id. at 13.

The defendant's attempt to base his claim of error on the district court's periodic cautionary instructions fares no better. To begin, the claim of error is counterintuitive. Cautionary instructions, sometimes called limiting instructions, are important weapons in a trial court's armamentarium. The use of such instructions is to be encouraged. When properly deployed, they can prevent (or, at least, ameliorate) harm from potentially prejudicial evidence. See, e.g., United States v. Ofray-Campos, 534 F.3d 1, 35 (1st Cir. 2008). Criminal tax cases in which a defendant mounts a good-faith defense are fertile soil for the judicious use of such instructions. In such cases, "the district court must be permitted to prevent the defendant's alleged view of

_____

e.g., United States v. Rosario-Peralta, 199 F.3d 552, 568 (1st Cir. 1999) ("Because the district court's instructions adequately covered defendants' theory of defense, there was no error in declining to give their proposed instruction.").

the law from confusing the jury as to the actual state of the law." United States v. Simkanin, 420 F.3d 397, 404 (5th Cir. 2005).

In this case, the district court's use of cautionary instructions appears to have been carefully considered. Moreover, the content of the cautionary instructions was impeccable. The court stated the law correctly and the language used was fair and balanced.[5] Last — but far from least — the court's admonitions were couched in language consistent with the defendant's theory of the case.

We have often recommended the use of limiting instructions in order to avoid prejudice. See, e.g., United States v. Collins, 60 F.3d 4, 7-8 (1st Cir. 1995); United States v. Gomez-Pabon, 911 F.2d 847, 860 (1st Cir. 1990); Gutierrez-Rodriquez v. Cartagena, 882 F.2d 553, 573-74 (1st Cir. 1989). Although we can conceive of instances in which a court might repeat limiting instructions so many times and in such improvident language that prejudice might result, that is not what happened here. Our

---

[5] Endeavoring to convince us otherwise, the defendant spotlights language that the district court used to explain the relationship between the reasonableness of a belief and the jury's evaluation of whether the belief was held in good faith. On the fifth day of the trial, the court told the jury that a belief that "the moon is made of green cheese" might be considered unreasonable and therefore probative of the belief-holder's insincerity. But the defendant neglects to mention that the district court both prefaced and concluded the reference by warning that it was an "extreme example" that had "nothing to do with" the case. We see neither error nor abuse of discretion in the court's use of a colorful example as part of a careful attempt, throughout the trial, to explain a sophisticated concept.

painstaking review of the record convinces us that the district court, far from removing the defendant's theory of the case from the jurors, put that theory squarely before them.

We need go no further.  For the reasons elucidated above, the district court's judgment is

**<u>Affirmed</u>**.