**UNITED STATES of America,**
**Plaintiff,**

**v.**

**[1] Carlos BARROS–VILLAHERMOSA,**
**Defendant.**

**Crim. No. 14–00135 (ADC).**

United States District Court,
D. Puerto Rico.

Signed March 11, 2015.

Filed March 12, 2015.

Carlos Alberto Perez–Irizarry, United States Attorney's Office, Orlando, FL, for Plaintiff.

Juan Ramon Rodriguez–Lopez, Rodriguez Lopez Law Office, Ponce, PR, for Defendant.

## OPINION AND ORDER

AIDA M. DELGADO–COLÓN, Chief Judge.

On February 26, 2014, defendant Carlos Barros–Villahermosa ("defendant") was charged in a two-count indictment with one count of falsely impersonating an officer or employee of the United States, in violation of 18 U.S.C. § 912, and one count of making a false statement, in violation of 18 U.S.C. § 1001. ECF No. 3.

### I. The Pending Matter

On September 3, 2014, defendant filed a motion to suppress statements ("the motion to suppress"). ECF No. 27. Therein, defendant alleges as follows. On June 21, 2011, he was interviewed by two agents of the U.S. Department of Justice's Office of the Inspector General ("the OIG"), Agent Robert Pérez and Agent Susan Howell. Id. at 1. During that interview, defendant allegedly told the OIG agents that (1) he had surrendered his government issued credentials to the U.S. Bureau of Prisons ("BOP"), and (2) he did not present BOP credentials to a police officer in an effort to identify himself as a federal official. Id. Before making these statements, defendant was not informed that any comments he made could be used against him in a criminal proceeding, even though, pursuant to OIG guidelines 226.1 and 226.7(F)(2), the agents should have informed defendant that his statements could be used against him. Id. at 2–5. Defendant argues that, in light of the violation of the OIG guidelines, all statements

that he made during the interview should be suppressed, citing McGinnis v. United States, 227 F.2d 598 (1st Cir.1955). Id. at 4–5. Defendant further asserts that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is not controlling. Id. at 5.

In response, the government asserts that (1) OIG guidelines do not confer any substantive rights on defendant, and (2) the interview was conducted in a non-custodial setting, and thus, the OIG agents were not required to inform defendant of his Miranda rights. ECF No. 33 at 1–7. The government further states that, during the interview, the OIG agents informed defendant that he did not have to speak with them, the interview was voluntary, and he was free to leave at any time. Id. at 2. The government concedes that the OIG agents did not inform defendant that any statements he made may be used against him in a criminal proceeding. Id. In reply, defendant reiterates that the OIG agents failed to comply with OIG guidelines, and that said non-compliance should result in suppression of his statements, citing United States v. Leahey, 434 F.2d 7 (1st Cir.1970), and Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). ECF No. 36 at 1–6.

### II. Legal Standard

 "Suppression of evidence is strong medicine, not to be dispensed casually." United States v. Adams, 740 F.3d 40, 43 (1st Cir.2014). The purpose of the exclusionary rule is to protect "specific, constitutionally protected rights of individuals." Id. Two independent requirements must be met for the exclusionary rule to be applied. First, "there must be a causal link between the constitutional violation alleged and the discovery of the evidence seized." United States v. García–Hernán-

*dez,* 659 F.3d 108, 112 (1st Cir.2011). Second, the beneficial effects of exclusion must outweigh the social costs. *Id.* In addition, "[t]he cases in which the Supreme Court has approved a suppression remedy for statutory violations are hen's-teeth rare, and in those cases, the excluded evidence arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests." *Adams,* 740 F.3d at 43 (alteration and quotation omitted). As a result, "statutory violations, untethered to the abridgment of constitutional violations, are not sufficiently egregious to justify suppression." *Id.*

### III. Discussion

 Against the prevailing wind of the above-cited case law, defendant's motion to suppress is blown apart. Importantly, no constitutional violation is alleged, nor occurred, here. Defendant, in fact, effectively asks the Court to steer clear of the Constitution and Supreme Court precedent interpreting it. Specifically, defendant asserts that *Miranda,* and its progeny, is not applicable here. ECF No. 27 at 5. Defendant does this for one simple reason—because it is undisputed that the June 21, 2011 interview was non-custodial in nature. *See* ECF No. 27 at 2; ECF No. 33 at 1–2. With that being the case, the protection of *Miranda,* and the notification of rights that it affords, is unhelpful to defendant because those rights need only be informed when an individual is interviewed in a *custodial* setting. *See Miranda,* 384 U.S. at 444, 86 S.Ct. 1602.

 Adrift from a constitutional violation, defendant looks for solace in the OIG Inspector General Manual ("the Manual"). The problem for defendant is that, in order for any alleged violation of the Manual to assist him in his request for suppression, said violation must be tethered to a constitutional violation. *See Adams,* 740 F.3d at

40. Here, that is not the case given that there is no provision of the Constitution, or precedent from the Supreme Court or the First Circuit Court of Appeals, establishing a person's right to be informed, in a *non-*custodial setting, that the person's statements may be used against him in a criminal proceeding. *See United States v. Ellison,* 632 F.3d 727, 731 (1st Cir.2010) (concluding that, even if the defendant had expressed a desire to invoke a constitutional right, he could not do so in a non-custodial interrogation); *see also McNeil v. Wisconsin,* 501 U.S. 171, 182 n. 3, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than custodial interrogation") (internal quotation omitted). Moreover, even if the Manual was violated, suppression of evidence is still "hen's-teeth rare." *See Adams,* 740 F.3d at 43.

Turning to the cases cited by defendant, they do not provide the support that he suggests. In the motion to suppress, defendant cites to *McGinnis.* ECF No. 27 at 4. In *McGinnis,* the First Circuit Court of Appeals held that the district court erred in failing to exclude all evidence resulting from an illegal search. *McGinnis,* 227 F.2d at 602–03. The First Circuit concluded that the search was illegal because the search warrant on which it rested was constitutionally invalid and there were no compelling circumstances to justify the search without a warrant. *Id.* at 601–02. This is diametrically different to the circumstances here, not least because the holding in McGinnis is based upon a *constitutional* violation—namely the Fourth Amendment's warrant requirement. *See id.* at 601–03. As explained supra, there is not such constitutional violation here.

In his reply (ECF No. 36), defendant also relies on *Leahey* and *Bridges.* In

*Leahey,* the First Circuit affirmed the district court's decision to suppress information, books, and records obtained by special agents of the Internal Revenue Service ("IRS") during visits to the defendant's home because the agents failed to observe IRS-announced procedures. *Leahey,* 434 F.2d at 8, 10–11. The First Circuit held that due process required the IRS to follow its procedures because the purpose of the procedures was to (1) produce uniform conduct amongst the IRS's agents, and (2) protect the constitutional rights of persons suspected of tax fraud. *Id.* at 10–11. More recently, the First Circuit has explained that it reached its holding in *Leahey* because the IRS had "purposefully announced the procedure to the public, [and thus,] it could be reasonably expected that taxpayers would rely on the agents' compliance with the procedure in their dealings with the IRS." *Adams,* 740 F.3d at 44.

Here, there was no such purposeful announcement of the Manual. In its opposition, the government states that the Manual is not publicly available, ECF No. 33 at 5 n. 3, and defendant does not dispute this assertion, *see generally* ECF No. 36.[1] As a result, it cannot be said that any member of the public would have, or will, rely on the guidelines set forth in the Manual, or that the Manual was part of a "deliberate public announcement" for the benefit of the public. *See Leahey,* 434 F.2d at 11; *see also United States v. Cáceres,* 440 U.S. 741, 752–53, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (concluding that the Due Process Clause was not implicated by the failure to follow IRS procedures because the defendant had not reasonably relied on procedures promulgated for his guidance or

benefit and had not suffered substantially from their violation).

Next, one of the stated goals for the procedures in *Leahey* was to insure "uniformity in protecting the Constitutional rights of all persons." *Id.* at 9 (internal quotation marks omitted). This is not one of the stated goals of the Manual. According to the exhibit that defendant filed, the purpose of the Manual was to "ensure that statements obtained in the course of an investigation are secured through procedures that do not have the appearance of coercion." ECF No. 27–1 at 2. Although the "appearance of coercion" language may have constitutional undertones in the context of a custodial interrogation, *see Miranda,* 384 U.S. at 448–55, 86 S.Ct. 1602, unlike the procedures in *Leahey,* the Manual does not state that constitutional protection is the goal of its guidelines. *See United States v. Horne,* 714 F.2d 206, 207 (1st Cir.1983) (holding that the district court correctly precluded the defendant from introducing evidence of certain IRS procedures because the same "were not designed to protect the constitutional rights of taxpayers.").

More importantly, even without advising defendant that his statements could be used against him, the interview that took place here did not have the appearance of coercion. It is undisputed that the interview took place in the lobby of a hotel, defendant was advised that the interview was voluntary and that he did not have to speak with the OIG agents, and defendant agreed to speak with the agents. ECF No. 27–3 at 1, ECF No. 33 at 2. The fact that defendant was not informed that his statements could be used against him did

---

1. The Court notes that defendant provided a photocopy of certain pages from the Manual as an exhibit to his motion to suppress. *See* ECF No. 27–1. The Court is not aware how defendant came across an apparent copy of the Manual, or whether the Manual provided is an accurate or up-to-date version, but, for present purposes, the Court will assume the provided copy is accurate.

not transform the interview into a coercive environment, especially in light of the warnings that were given and the setting of the interview. In this light, the OIG agents did not violate the Manual's stated purpose of preventing the appearance of coercion in obtaining statements during investigations.

Turning to *Bridges,* in that case, *inter alia,* statements were introduced against an alien as substantive evidence in a deportation proceeding, even though admission of the statements violated the regulations of the Immigration and Naturalization Service. *Bridges,* 326 U.S. at 139–40, 150–52, 65 S.Ct. 1443. The Supreme Court explained that the regulations in question were designed to protect the interests of aliens and to afford them due process of law at the crucial stage of their deportation proceedings when the deportation decision was made. *Id.* at 152–53, 65 S.Ct. 1443. This is simply not the situation here, as the Manual is designed to prevent the appearance of coercion during an interview—it is not designed to afford defendant due process of law at the crucial stage of a proceeding against him.[2]

In summary, because defendant's constitutional rights have not been violated, there is no basis for the Court to exclude the statements that defendant made during the June 21, 2011 interview. *See Adams,* 740 F.3d at 43; *García–Hernández,* 659 F.3d at 112. As a result, the motion to suppress (ECF No. 27) is **DENIED.**

## IV. Conclusion

For the reasons set forth herein, the Court DENIES defendant's motion to suppress (ECF No. 27). Defendant's motion to restrict the motion to suppress and its accompanying exhibits (ECF No. 26) is **GRANTED.**

**IT IS SO ORDERED.**

2. In addition, the context of the circumstances in *Bridges* cannot be forgotten. *See Bridges,* 326 U.S. at 157–59, 65 S.Ct. 1443 (Murphy, J., concurring) (setting out the factual background of the attempts to deport Bridges, and stating that the same would "stand forever as a monument to man's intolerance of man").